#4   No Fee/No IFP                    15-1031/LCC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HENRY UNSELD WASHINGTON,              CIVIL ACTION NO. 15-1031
                  PLAINTIFF
         V.                            CIVIL COMPLAINT
ROBERT D. GILMORE
         Defendants et al.
_____

RECEIVED
AUG - 7 2015
CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

PLAINTIFF MOVES THIS COURT WITH A 42 U.S.C. 1983 CIVIL RIGHTS COMPLAINT

I. INTRODUCTION:

1. HENRY UNSELD WASHINGTON ("WASHINGTON") BRINGS THIS ACTION, CHARGING THAT THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS AND MANY OF ITS AFFILIATES AND OFFICERS LOCATED STATEWIDE AND AT SCI-GREENE ("DEFENDANTS") PERMITTED AND ENCOURAGED UNLAWFUL RETALIATION AGAINST WASHINGTON FOR HIS BRINGING LEGAL ACTION IN RESPONSE TO VIOLATIONS OF HIS CIVIL RIGHTS.

2. ADDITIONALLY, WASHINGTON ALLEGES THAT DEFENDANTS FAILED TO PROTECT HIM FROM PHYSICAL AND SEXUAL ASSAULT, AND PERMITTED, ENCOURAGED, AND ENGAGED IN — DIRECTLY AND THROUGH NON-ACTION — SEXUAL AND PHYSICAL ASSAULT OF HIM, SEXUAL HARASSMENT, RELIGIOUS PRACTICE. FINALLY, PLAINTIFF ALLEGES THAT DEFENDANTS DENIED HIM NECESSARY HEALTH CARE SERVICES.

3. WASHINGTON HAS EXHAUSTED ALL AVAILABLE INTERNAL ADMINISTRATIVE REMEDIES AND THUS RELIEF THROUGH THE COURTS IS HIS ONLY AVENUE FOR ADEQUATE REMEDY.

II. JURISDICTION:
4. THIS COURT HAS JURISDICTION PURSUANT TO 42 U.S.C. § 1331. PLAINTIFF CLAIMS THAT DEFENDANTS HAVE VIOLATED RIGHTS PROTECTED BY THE FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. HIS CLAIM FOR DAMAGES IS BROUGHT PURSUANT TO 42 U.S.C. 1983

5. VENUE IS PROPER UNDER 28 U.S.C. § 1391(B) BECAUSE ALL VIOLATIONS OF WASHINGTON'S RIGHTS
W V. 6
                              (1)

as alleged herein occurred within the Western District of Pennsylvania

## III. PARTIES

(6) Henry Unseld Washington is an adult male who is currently residing at the State Correctional Institution – Somerset (SCI-Somerset) in Somerset County, Pennsylvania

(7) Defendants are ~~[redacted]~~ employees of the Pennsylvania Department of Corrections at SCI-Greene in Greene County, Pennsylvania and officials within the Pennsylvania Department of Corrections and Office of Prison Management

## IV. FACTS

(8) Plaintiff Washington was first incarcerated in Pennsylvania in 1980 and was first held at SCI-Dallas. In 1994, he was moved to SCI-Greene

(9) During this time, he had his first problems with a group of guards that led to ongoing problems with prison authorities. This situation developed out of Washington umpiring a prison softball game between prisoners and guards. The prisoners won the game and guards responded through physical abuse of Washington. Prior to this incident, for over fifteen years, Washington was a good prisoner with only minor misconducts on his disciplinary record

(10) Washington was transferred from SCI-Greene in 1997, but returned in 2009

(11) The staff of SCI-Greene were aware that Washington has ongoing litigation against prison officials. This includes Washington v. Folino, 2:11-CV-1046, filed in 2011; Washington v. Folino, No. 644 C.S. 2014, filed in 2014; Washington v. Grace, 455 F. Appx 166 (3rd Cir 2011) filed 2008; Washington v. Klem, 497 F.3d 272 (3rd Cir 2007) filed in 2001. The latter of these is a deprivation of religious material. Guards at SCI-Greene are aware of both of these pieces of litigation.

(12) Washington is defined as a "paper pusher" by guards and staff at SCI-Greene. They respond to him with this in mind and have retaliated against him for filing these litigations against them personally -n- other SCI-Greene prison officials.

(13) In the course of these actions, prison officials, including defendants, including Dr. Jin, Bennett, Oswald, stated that their actions were in response to Washington "suing

W v. G                                      (2)

me", "attacked the RHU staff family", when plaintiff sued one he sued them, too", and "penalize plaintiff". These officials often stated that they were working under the direct orders of their superiors in connection to Washington's on going litigation. One prison official, M. Park stated "You're suing my family, He's only protecting his family"

14. The present actions taken against Washington occurred only after he pursued legal complaints, grievances, and actions of various concerns he had, including filing a legal action for access to his personal property that was necessary for his religious practice in <u>Washington v. Klem</u>,

15. Prison officials, including Dr. Byunghak Jin, have sexually harassed Washington. This occurred on numerous occasions, including during at least one request for medical services.

16. Prison officials have made sexual and lewd comments towards Washington in an effort to to embarrass, harass, and upset him. For example, Dr. Jin, said to Washington in 2013 during an instance when Washington was experiencing classic heart attack symptons, "What you need is a good screwing"

17. Prison officials, including officer T.S. Oswald, have engaged in unwanted touching and banter of a sexual nature towards Washington, including leaving Washington nude-n-sprawled out on the floor in need of immediate medical care, laughing as they walked away

18. While escorting plaintiff to his cell, one prison official, Oswald, has rubbed Washington' buttock in an unwelcomed way and made lewd moaning sound in Washington's ear, simulating an orgasm.

19. During sick call, Dr. P. Dascani, while Washington was experiencing emergency needs requested sex from Washinton, despite Washington begging for medical care

20. Washington suffers from a variety of medical conditions, including, Whipple's disease, dementia, damaged vocal cords, urethral stricture, irreversible foot fungus, testosterone deficiency, chronic fatigue-n-difficulty concentrating. According to prison officials, he has had at least two heart attacks, he is going blind in his right eye.

21. Over the past six years, Washington has experienced substantial and rapid weight loss as a result of his on going health issues.

22. Prison doctors and other medical proffessionals acknowled Washington health

W.V.G

NEEDS AND BLATANTLY CHOSE TO IGNORE THEM. ONE PRISON DOCTOR TOLD WASHINGTON DIRECTLY THAT HE IS NOT GOING TO WASTE TIME ON HELPING HIM

23). DR JIN, A PRISON DOCTOR WASHINGTON HAS HAD SEVERAL ISSUES WITH IN THE PAST, INSISTS ON BEING THE ONLY DOCTOR TO RESPOND TO ALL OF WASHINGTON'S REQUESTS FOR MEDICAL ASSISTANCE, DESPITE WASHINGTON'S REQUEST THAT HE NOT. MORE THAN ONCE HE HAS SEXUALLY AND PHYSICALLY ASSAULTED AND SEXUALLY HARASSED WASHINGTON. OTHER PRISONERS IN SOLITARY CONFINEMENT WERE TREATED BY MEDICAL STAFF OTHER THAN DR. JIN-N-DR. M. PARK UPON REQUEST, BUT WASHINGTON IS ROUTINELY DENIED

24). DR. JIN-N-DR PARK INFORMED WASHINGTON THAT SUING PRISON'S MEDICAL STAFF AND HIM MEANS THAT HE WILL NOT BE HELPED WITH HIS MEDICAL CONDITIONS. PRISON OFFICIALS WHO ATTEMPTED TO ASSIST WASHINGTON, WITH HIS MEDICAL NEEDS INCLUDING A MS. JENNIFER TRIMAI, HAVE BEEN KEPT AWAY FROM WASHINGTON BY DR. JIN-N-DR. PARK, AND UPON INFORMATION AND BELIEF, WARDEN GILMORE

25). AT NO POINT HAS WASHINGTON EVER BEEN DISCIPLINED FOR VIOLENT BEHAVIOR, DRUGS, OR ANY OTHER SERIOUS CHARGE, NOR HAS HE EVER BEEN TRANSFERRED AS A RESULT OF A DISCIPLINARY ACTION

26). OUTSIDE OF STAFF'S POTENTIAL PERCEPTION OF WASHINGTON'S PURSUIT OF JUSTICE FOR ALLEGED VIOLATIONS OF HIS CIVIL RIGHTS, WASHINGTON HAS BEEN A MODEL PRISONER DURING THE 30 PLUS YEARS OF HIS INCARCERATION WITH LIMITED WRITE-UPS

27). DESPITE PLAINTIFF'S EXCELLENT PRISON RECORD WITH NO SIGNIFICANT DISCIPLINARY VIOLATIONS, WARDEN GILMORE HAS NONETHELESS KEPT WASHINGTON IN SOLITARY CONFINEMENT IN THE RESTRICTIVE HOUSING UNIT AT SCI-GREENE IN RETALIATION FOR WASHINGTON'S LITIGATION ACTIVITIES. WASHINGTON LIVED IN EXTRAORDINARILY RESTRICTIVE CONDITIONS OF 23-24 HOURS SOLITARY CONFINEMENT. HE IS NOT PERMITTED TO PARTICIPATE IN ANY PROGRAMMING OR CONGREGATE ACTIVITY

28). WASHINGTON EATS ALL MEALS IN HIS CELL

29). WASHINGTON IS SUBJECTED TO SEVERE RESTRICTIONS ON HIS VISITS, PHONE CALLS, PROPERTY, AND CORRESPONDENCE

30). EVERYTIME WASHINGTON EXITS HIS CELL HE IS FORCED TO UNDERGO A HUMILIATING VISUAL STRIP SEARCH AND MORE THAN ONCE FLUID, CONDIMENTS, DISINFECTANTS, AND TOBACCO

W.V.G.

CHEW HAS BEEN SPLASHED ON HIS GENITALS DURING THESE INSPECTIONS

31). DURING AT LEAST ONE OF SICK CALL RESPONSE DR. JIN, AND DR. DASCANI INSTRUCTED WASHINGTON TO STRIP SEARCH -N- DO SEXUAL POSES, WHILE EXPERIENCING HEALTH SYMPTOMS THAT WOULD REQUIRE EMERGENCY MEDICAL CARE.

32). THE SOCIAL ISOLATION, LACK OF ENVIRONMENTAL STIMULATION, AND STRESS CAUSED BY SUCH RESTRICTIVE LIVING CONDITIONS ARE EXACERBATING MENTAL AND PHYSICAL HEALTH CONDITIONS.

33). WASHINGTON WAS BEING KEPT IN LONG TERM SOLITARY CONFINEMENT WITHOUT A LEGITIMATE PENOLOGICAL JUSTIFICATION. HE, IN EARLY 70's, NO HISTORY OF VIOLENCE, AND NUMBER OF SERIOUS HEALTH ISSUES

34). PRISON ADMINISTRATION, INCLUDING WARDEN GILMORE, HAVE BEEN REPEATEDLY ALERTED TO THOSE ONGOING ISSUES, THIS INCLUDES, BUT IS NOT LIMITED TO, PLAINTIFF'S FILING INTERNAL COMPLAINTS THROUGH THE GRIEVANCE SYSTEM; PLAINTIFF VERBALLY INFORMING THEM OF HIS ONGOING CONCERNS AND ASKING THEM TO STOP; THROUGH COMPLAINTS FILED IN FEDERAL COURT THAT OUTLINE PRIOR ISSUES THAT HAVE NEVER BEEN RECTIFIED

35). WARDEN GILMORE HAS BEEN DIRECTLY INVOLVED IN THESE ONGOING ISSUES THROUGH A LACK OF RESPONSE AND BLATANT INDIFFERENCE TO WASHINGTON'S PERSONAL AND MENTAL WELL BEING

V. CAUSES OF ACTION

COUNT I - RETALIATION

36). THE STATEMENT OF CLAIMS, AND PARAGRAPHS 1 THROUGH 35 ARE INCORPORATED BY REFERENCE

37). THE CONDUCT WHICH LED TO THE RETALIATION AGAINST WASHINGTON IS A COMBINATION OF WASHINGTON'S ATTEMPT TO ACCESS THE COURTS TO ADJUDICATE ONGOING CIVIL RIGHTS CONCERNS, PROTECTED UNDER THE FIRST, EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND HIS EFFORTS TO FULLY ENGAGE WITH HIS RELIGIOUS BELIEFS, AS REENFORCED THROUGH A SETTLEMENT AND PROTECTED UNDER 42 USC 2000cc, AND THE FIRST AMENDMENT OF THE CONSTITUTION

38). PRISON OFFICIALS AT SCI-GREENE, ALL STATE ACTORS SUBJECTED WASHINGTON TO ADVERSE ACTIONS.

39). THESE ADVERSE ACTIONS INCLUDED, BUT ARE NOT LIMITED TO, SEXUAL AND PHYSICAL ASSAULT, DENIAL OF MEANINGFUL HEALTH CARE, ACCESS TO COURT, BASELESS DISCIPLINARY WRITE

W.V.B.                                            (5)

UPS, DEROGATORY AND RACIST LANGUAGE, DENIAL OF RELIGIOUS PRACTICE

40. WASHINGTON'S CONDUCT PURSUING HIS CONSTITUTIONAL RIGHTS WAS REASONABLE

41. A REASONABLE PERSON WOULD BE LIKELY TO BE DETERRED FROM PURSUING THEIR RIGHTS UNDER THESE CONDITIONS

42. THE ACTIONS OF THESE PRISON OFFICIALS WERE DIRECTLY IN RESPONSE TO WASHINGTON'S ATTEMPT TO PURSUE HIS CONSTITUTIONAL RIGHTS

43. A CAUSAL LINK EXISTS BETWEEN WASHINGTON'S PURSUIT OF HIS CONSTITUTIONAL RIGHTS AND THE ADVERSE ACTIONS TAKEN BY PRISON OFFICIALS, AS DEMONSTRATED BY THE PROXIMITY OF THE ACTIONS TO WASHINGTON'S PURSUIT OF HIS RIGHTS AND VERBAL ACKNOWLEDGEMENT BY PRISON OFFICIALS

44. AS A RESULT OF DEFENDANT'S RETALIATION WASHINGTON'S ABILITY TO ADVANCE HIS CONSTITUTIONAL RIGHTS WAS INHIBITED IN THE FORM OF HIS INABILITY TO FULLY ENGAGE WITH HIS RELIGION, AS WELL AS PURSUE JUSTICE FOR HIS CIVIL RIGHTS VIOLATIONS WITHOUT FEAR OF FURTHER RETALIATION

45. RETALIATORY REPORTS LED TO PROLONGED WASHINGTON'S DURATION IN SOLITARY CONFINEMENT, WORSENING HIS HEALTH, CAUSING A SUBSTANTIAL RISK THAT HE WILL BE SUBJECTED TO GREATER HARM IN THE FUTURE.

46. WASHINGTON EXISTS IN A PERPETUAL CYCLE OF DESIRING TO SEEK A REMEDY TO THE VIOLATIONS OF RIGHTS, AS WELL AS A REMEDY TO HIS IMMEDIATE MEDICAL AND PHYSICAL NEEDS, BUT, SEEKING SUCH REMEDIES EXACERBATES THE RETALIATION HE ENDURES AND CAUSES THE PROBLEM TO WORSEN

COUNT II — FAILURE TO PROTECT FROM AGGRAVATED AND SEXUAL ASSAULT

47. THE ATTACHED STATEMENT OF CLAIMS, AND PARAGRAPHS 1 THROUGH 46 ARE INCORPORATED BY REFERENCE.

48. PRISON OFFICIALS HAVE BEEN DELIBERATELY INDIFFERENT TO THE ON GOING MENTAL AND PHYSICAL ABUSE WASHINGTON HAS ENDURED, AND HAVE FAILED TO INTERVENE TO PROTECT HIM FROM HARM.

49. PRISON OFFICIALS, SPECIFICALLY DEFENDANT GILMORE, ARE FULLY AWARE OF THE SEXUAL AND AGGRAVATED ASSAULT OF WASHINGTON. DESPITE WASHINGTON'S MANY COMPLAINTS ABOUT THESE MATTERS, DEFENDANTS HAVE FAILED TO PUT A STOP TO THESE ABUSES.

50. WASHINGTON'S ALREADY FRAGILE MEDICAL STATE HAVE BEEN EXACERBATED BY THE LACK OF INTERVENTION BY THE PRISON ~~~~~~~~, ADMINISTRATION FOR ABUSES BY THEIR STAFF.

51. PRISON ADMINISTRATION ARE AWARE OF, OR ~~~~~~~~ REASONABLY SHOULD BE AWARE OF, THE ON GOING PHYSICAL, MENTAL, AND SEXUAL ABUSE WASHINGTON IS SUBJECT TO, BUT HAVE ACTED WITH DELIBERATE INDIFFERENCE IN THEIR REFUSAL TO INTERVENE OR PREVENT IT.

W.V.G

(6)

52). Rather, at times, prison officials have acted as party to the abuse and have conducted it, both through inaction and encouragement

### Count III - Denial of Health Care Services

53). The attached statement of claims, and paragraphs 1- through 52 are incorporated by reference.

54). Defendants, directly and through their agents, consistently denied Washington requested and necessary emergency medical treatment and health care services to Washington during the time in question

55). While Washington did receive at times weekly visits by prison medical professionals, the medical care provided was illusory and did not fulfill their obligations established under the Eighth Amendment.

56). Prison medical officials have not only acted in deliberate indifference towards the health needs of Washington, but have responded to him with deliberate animosity by telling him they will not waste their time on him and acknowledging that his pursuit of justice through the administrative avenues of the Department of Corrections and judicial system affects the level of assistance they give him

57). Prison officials refusal to intervene and ensure that Washington receives his necessary medical attention amounts to deliberate indifference

### Count IV - Denial of Access to the Court

58). The attached statement of claims, and paragraphs 1 through 57 are incorporated by reference.

59). Gilmore, through his role as superintendant, and his supervison of his subordinates, more than once denied Washington access to the courts, Washington was informed by prison officials that his mail was not going out due to the ongoing litigation he had against the officials.

60). On more than on occasion, prison officials, including P.E. Barkefelt has shown up at Washington's cell with a piece of outgoing mail Washington had placed into the outgoing mail moments earlier, the prison officials have then, on more than one occasion, ripped the mail into pieces in front of Washington

61). This, and denial writing paper causing Washington's case, <u>Washington v. Folino</u>, No: 14-1880, on appeal

62). Washington's rights of access to the court and free speech were stifled on more than one occasion in a vindicive-n-intentional way by the official of the state

W.V.G.

(7)

COUNT V. DENIAL OF ACCESS TO RELIGIOUS PROPERTY

63. THE ATTACHED STATEMENT OF CLAIMS, AND PARAGRAPHS 1 THROUGH 62 ARE INCORPORATED BY REFERENCE

64. IN A PRIOR SETTLEMENT AGREEMENT, PRISON OFFICIALS AGREED TO PROVIDE WASHINGTON WITH THE RELIGIOUS LITERATURE NEEDED TO CONDUCT THE DAILY RITUALS OF HIS RELIGION

65. PRISON OFFICIALS CONSISTANTLY FAILED TO PROVIDE WASHINGTON WITH ACCESS TO THIS LITERATURE ON A WEEKLY BASIS

66. DESPITE THEIR REQUIREMENTS TO UTILIZE THE LEAST RESTRICTIVE MEANS IN REGARDS TO ANY INFRINGEMENT UPON HIS RELIGIOUS NEEDS, PRISON OFFICIALS BLATANTLY DENIED WASHINGTON ACCESS TO THIS LITERATURE, DUE TO PLAINTIFF HAVING SUED RHU STAFF, OR THEIR FAMILY

COUNT VI - CONSPIRACY

67. THE ATTACHED STATEMENT OF CLAIMS AND PARAGRAPH 1 THROUGH 66 ARE INCORPORATED BY REFERENCE.

68. DEFENDANTS OFTEN STATED THAT THEIR ACTIONS WERE BEING CONDUCTED PER THE ORDERS OF THEIR SUPERVISORS TO PENALIZE WASHINGTON FOR SUING THEM PERSONALLY, SCI-GREENE MEDICAL PROFESSIONALS, MEMBERS OF SCI-GREENE RHU STAFF, SCI-GREENE WARDEN, OR COMMUNICATIONS WITH THE DOJ.

69. PRISON OFFICIALS, AND THEIR SUPERVISORS REGULARLY STATED THEY HAD PLANNED, AND HAVING AGREED TO CARRY OUT ACTS TO PENALIZE WASHINGTON FOR HAVING SUED THEM PERSONALLY, THE WARDEN, MEMBERS OF SCI-GREENE RHU STAFF, MEDICAL PROFESSIONALS, AND FOR COMMUNICATIONS WITH THE DOJ; AND TO DEPRIVE, PREVENT, AND DENY WASHINGTON HIS PROTECTED CONSTITUTIONAL RIGHTS

COUNT VII - EQUAL PROTECTION

70. THE ATTACHED STATEMENT OF CLAIMS, AND PARAGRAPHS 1-THROUGH 69, ARE INCORPORATED BY REFERENCE

71. PRISON OFFICIALS AND MEDICAL PROFESSIONALS CONSISTENTLY PROVIDED ALL OTHE RHU INMATES, ESPECIALLY WHITE INMATES ON SICK CALL, SUCCESSFULLY, AND PER CONSTITUTION; WHILE CONDUCTING THE SAME EVENT, BASED ON NON MEDICAL REASONS PRISON OFFICIALS-N-MEDICAL PROFESSIONALS DENIED WASHINGTON THE SAME CONSTITUTIONAL RIGHTS.

72. PRISON OFFICIALS-N-MEDICAL PROFESSIONALS CONSISTENTLY SINGLED WASHINGTON OUT TO SUBJECT THEIR ABUSE UPON. THESE ARE ABUSES SCI-GREENE PRISON OFFICIALS-N-MEDICAL PROFESSIONALS, READILY WOULD OF, OR REASONABLY SHOULD HAVE FORESEEN, WOULD VIOLATE WASHINGTON CONSTITUTIONALLY PROTECTED RIGHTS. WHITE INMATES WEREN'T SUBJECTED TO THESE ABUSES, THESE ABUSES TO WASHINGTON WERE CONNECTED TO WASHINGTON'S ONGOING LITIGATION, SEVERAL PRISON OFFICIALS, AND MEDICAL PROFESSIONALS HAVE CONSISTENTLY STATED, SUING ▇▇▇ ME-N-SCI-GREENE RHU STAFF", "SUING ME-N-MEMBERS OF SCI-GREENE MEDICAL STAFF", "PENALIZE PL-

W V. G

⑧

AINTIFF FOR SUING THEM. THE PRISON OFFICIALS AND MEDICAL PROFESSIONALS OFTEN STATED THAT THEIR ACTIONS WERE UNDER DIRECT ORDERS OF THEIR SUPERVIERS.

73). PRISON OFFICIALS AND MEDICAL PROFESSIONALS CONSISTENTLY PROVIDED THE OTHER INMATES IN SOLITARY CONFINEMENT THEIR CONSTITUTIONAL RIGHTS, WHILE CONDUCTING THE SAME EVENT, PRISON OFFICIALS-N-MEDICAL PROFESSIONALS DENIED WASHINGTON THE SAME CONSTITUTIONAL RIGHTS.

VI. RELIEF

74). N.B. ALL REQUEST WHICH ARE BEYOND THE COURT AUTHORITY TO GRANT, CAN BE USED AS A REFERENCE IN THE CASE THERE IS A SETTLEMENT

75). WHEREFORE, ON THE BASIS OF THE FOREGOING, WASHINGTON ASK THE COURT TO

1. ASSUME JURESDICTION OF THIS CASE; REINSTATE WASHINGTON V. GRACE, 4:07-CV-0867; WASHINGTON V. GRACE, 4:08-CV-1283; WASHINGTON V. FOLINO, 2:11-CV-1046; WASHINGTON V. COMMONWEALTH OF PA, C.P. 51-CR-0404151, BACK ONTO THEIR RESPECTIVE DOCKETS
2. DECLARE DEFENDANTS' RETALIATORY ACTIONS AGAINST WASHINGTON TO BE UNCONSTITUTIONAL AND ENJOIN THEM FOR COMMITTING SUCH ACTIONS IN THE FUTURE;
3. ORDER DEFENDANTS TO RELOCATE WASHINGTON TO SCI-PERRY, IN PERRY, FLA., OR A NEARBY FLA. PRISON; SCI-CHESTER, OR SCI-GRATERFORD, BOTH LOCATED IN PA. DOC., WITH PERMANENT SINGLE CELL STATUS IN ORDER TO PROTECT WASHINGTON FROM THE ON GOING, AND FUTURE RETALIATORY ABUSES HE IS FORCED TO ENDURE
4. ENJOIN DEFENDANTS FROM CONTINUING TO RETURN WASHINGTON IN SOLITARY CONFINEMENT
5. ENJOIN PRISON OFFICIALS FROM REFUSING TO PROVIDE WASHINGTON WITH THE APPROPRIATE MEDICAL CARE HE NEEDS. IMMEDIATE PLACEMENT IN JOHN'S HOPKINS UNIVERSITY HOSPITAL FOR CARE BY OPTHALMOLOGISTS, CARDIOLOGISTS, UROLOGISTS, OTOLARYNGOLOGISTS, DERMATOLOGIST, GASTROENTERIOLOGIST
6. ENJOIN PRISON OFFICIALS FROM DENYING WASHINGTON FROM ACCESSING THE LITERATURE NECESSARY TO PRACTICE HIS RELIGIOUS BELIEF
7. AWARD WASHINGTON FINANCIAL DAMAGES IN THE AMOUNT OF $5,000,000
8. AWARD WASHINGTON PUNITIVE DAMAGES IN THE AMOUNT OF $5,000,000 AGAINST EACH DEFENDANT.
9. AWARD INJUNCTIVE RELIEF IN MONETARY VALUE OF $500,000 AGAINST EACH DEFENDANT
10. IMMEDIATE INCREASE OF STORAGE SPACE CONCERNING THE DICTATES OF WASHINGTON V. KLEM

W.V.G.

SETTLEMENT, TO WHICHEVER COMES FIRST "100 RECORD BOXES" OR "100,000 BOOKS"

11. PERMANENT OBSERVATION IN THE FORM OF OUTDOOR CELEBRATION CONCERNING ALL OF WASHINGTON'S RELIGIOUS HOLIDAYS AND FESTIVITIES ON A ANNUAL BASIS

12. PERMANENT RESERVED SPACE IN THE CHAPEL FOR CONGREGATIONAL SERVICES ON A WEEKLY BASIS CONSISTING OF 3-HOURS SESSIONS

13. PERMANENT RESERVED SPACE IN THE CHAPEL FOR CHRISTIAN BLACK STUDIES ON A WEEKLY BASIS CONSISTING OF 3-HOURS SESSIONS

14. PERMANENT RESERVED SPACE IN THE CHAPEL FOR SEGA: SELF ENHANCEMENT AWARENESS GROUP ON A WEEKLY BASIS CONSISTING OF 3-HOURS SESSIONS

15. PERMANENT ASSIGNED JOB INSIDE OF THE GYM OR CHAPEL CONSISTING OF 8 HOURS A DAY, 7 DAY WORK WEEK AT THE DOC MAXIMUM PAY RATE

16. PERMANENT SUPPLEMENTARY DIET OF WASHINGTON OWN CHOOSING

17. PERMANENT CONJUGAL VISITS TWICE PER WEEK WITH SOMEONE OF PLAINTIFF OWN CHOOSING, CONSISTING OF 96 HOURS STRAIGHT PER VISIT

18. REPLACE OR PROVIDE PLAINTIFF WITH A T.V., RADIO, TYPEWRITER, FOOTLOCKER, AND WATCH CONSISTING OF MODELS OF WASHINGTON'S OWN CHOICE, WHETHER ON D.C. OR AC STATUS, OR IN GENERAL POPULATION OR ANY WHERE IN THE DOC, OR STATE INSTITUTION OR RESTRICTED HOUSING AREA

19. PERMANENT FREE CABLE T.V. FOR THE REMAINDER OF WASHINGTON'S LIFE, APPLY IRRESPECT OF GENERAL POPULATION, HOUSING AREA, STATE OR FEDERAL INSTITUTION, AC OR DC AREA

20. IMMEDIATE SURGERY TO RESTORE WASHINGTON'S PENIS TO ITS NORMAL SIZE OF "10½ X 7"

21. PERMANENT EXTENDED COMMISSARY, IDLE PAY, TELEPHONE PRIVILEGES, ALL FOOD ITEM REMAIN IN CELL IRREGARDLESS OF THE AMOUNT, HOUSING AREA, STATE OR FEDERAL INSTITUTION, APPLY IN ALL PA. PRISONS, AC AND DC STATUS

22. JURY TRIAL DEMANDED

23. IMMEDIATE COMMUTATION OF WASHINGTON'S LIFE SENTENCE, INCLUDING FULL RETIREMENT-N-MEDICALCARE PLAN

24. AWARD WASHINGTON SUCH OTHER RELIEF AS IS NECESSARY

"RESPECTFULLY SUBMITTED"
S/ Henry Unseld Washington
HENRY UNSELD WASHINGTON
AM3086
PRO SE

DATED: 7-18-15

W.V.B

(10)