**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HENRY UNSELD WASHINGTON,    ) | Civil Action No. 15-1031 |
| ) | |
| Plaintiff,    ) | District Judge David S. Cercone |
| ) | Magistrate Judge Lisa Pupo Lenihan |
| v.    ) | |
| ) | |
| ROBERT D. GILMORE, *Warden*,    ) | ECF Nos. 78, 89 |

HENRY UNSELD WASHINGTON,   )

         Plaintiff,   )

         v.   )

ROBERT D. GILMORE, *Warden*,
TRACY SHAWLEY, *Warden's
Assistant*, S.P. DURCO, *RHU
Commander*, P.E. BARKEFELT, *RHU
Lieutenant*, A.J. MORRIS, *Lieutenant*,
C. WILLIAMS, *Lieutenant*, G.
GRABLE, *Sergeant*, J.M. SMITH,
*Sergeant*, ROBERT NELSON,
*Corrections Officer*, T.S. OSWALD,
*Corrections Officer*, L. COMER,
*Corrections Officer*, T.I. BENNETT,
*Property Officer/Corrections Officer*,
R. HENDRICKS, *Corrections Officer*,
J. CODDY, *Corrections Officer*, J.
HEGETER, *Corrections Officer*, D.
FARRIER, *Corrections Officer*, M.
STUMP, *Corrections Officer*, G.
TAIT, *Corrections Officer*, J.D.
SUHAN, *Corrections Officer*, IRMA
VIHLIDAL, *Health Care
Administrator*, B. JIN, *Medical
Director*, M. PARK, *Doctor*, P.
DASCANI, *Doctor*, M. COMER, *P.A.*,
E. MATTES, *P.A.*, E. MWAURA,
*P.A.*, P. DENNISON, *Corrections
Officer*,

         Defendants.   )

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that the Motion to Dismiss Plaintiff's Second Amended Complaint filed by the Medical Defendants (ECF No. 89) be granted in part and denied in part, and it is recommended that the Motion to Dismiss Plaintiff's Second Amended Complaint filed by the Corrections Defendants (ECF No. 78) be granted in part and denied in part.  The Motions should be granted as they relate to Plaintiff's retaliation, access to court, free exercise of religion, and equal protection claims, which should all be dismissed with prejudice.  The Motions should also be granted as they relate to the sexual harassment claims against Defendants Dr. Jin, Dr. Dascani, Nelson and Suhan, which also should be dismissed with prejudice.  The Motions should be denied as they relate to Plaintiff's sexual harassment/assault claims against Defendants Oswald, Smith, Farrier and Stump, and should also be denied as to Plaintiff's denial of medical care claims against Defendants Dr. Jin, Dr. Park, Dr. Dascani, PA Comer, PA Mattes, PA Mwaura, and CHCA Vihlidal.

### II.    REPORT

Plaintiff Henry Unseld Washington ("Plaintiff") is an inmate currently confined in the Pennsylvania Department of Corrections at the SCI-Somerset.  He initiated this action by the filing of a Complaint (ECF No. 1) but the case was closed for his failure to pay the filing fee or submit a Motion for Leave to proceed *in forma pauperis* (ECF No. 2).  His Motion to Proceed *in forma paupers* was filed on August 24, 2015 (ECF No. 3), and granted on September 1, 2015 (ECF No. 4).  The case was reopened and his Complaint was filed on September 1, 2015 (ECF No. 5) along with a Motion for extension of time of 180 days to provide the Court with a list of all the defendants in this case (ECF No. 6).  Plaintiff was granted 45 days in which to provide the

Court with the list of defendants (ECF No. 7), and he did so on October 22, 2015 (ECF N. 9). The Defendants were served on March 29, 2016 (ECF No. 20), and eventually an Amended Complaint was filed by Plaintiff on August 16, 2016 (ECF No. 58). A Second Amended Complaint was filed on January 31, 2017. (ECF No. 76.)

Defendants, who consist of both medical staff and corrections officials at SCI-Greene, responded by filing Motions to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim. (ECF Nos. 78, 89.) Plaintiff submitted his response in opposition to the Motions to Dismiss in four parts received by the Court on April 4, 6, 7, and 14, 2017, respectivley. (ECF Nos. 92-95.) The Motions are now ripe for review.

A. **Plaintiff's Allegations**

Plaintiff's Second Amended Complaint is forty (40) pages in length and consists of 291 separate paragraphs/allegations. (ECF No. 76.) It contains three counts, but each count appears to consist of several different types of claims involving multiple events. Count one is titled "Cruel-N-Unusual Punishment, and Equal Protection," (id., p.11), Count two is titled "Prohibiting Free Exercise of Religion, Free Speech, To Petition the Government for a Redress of Grievances," (id., p.29), and Count three is titled, "Equal Protection," (id., p.34). The Court, however, has taken the time to examine each and every paragraph of the Second Amended Complaint and feels that it is more appropriately divided into the following sections: retaliation (id., ¶¶ 74, 202-13, 219-21); denial of access to court (id., ¶¶ 35-42, 45-46, 54-57, 199-201); violations of freedom of religion (id., ¶¶ 47-51, 187-198); violations of equal protection (id., ¶¶ 58-62, 77, 89, 216-224); violations of the right to be free from cruel and unusual punishment involving allegations of sexual assault and harassment (id., ¶¶ 63-69, 77-78, 85, 89-91, 94-97, 99, 101, 103, 110, 122, 127-28, 135-36, 139, 174-85); and violations of the right to be free from

cruel and unusual punishment involving allegations of denial of medical care (id., ¶¶ 70-77, 79, 83-86, 88, 92-95, 98, 100-02, 104-73). For efficiency purposes, the Second Amended Complaint will be discussed in that order.

**B.  Standard of Review**

The United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quotation marks and citations omitted); see also Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir. 2013).

Also, when considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently

alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## C. Discussion

### 1. Retaliation

The allegations in Plaintiff's Second Amended Complaint (ECF No. 76) regarding instances of retaliation involve Defendants CO Dennison (id., ¶¶ 219-21); Gilmore (id., ¶¶ 202-06, 211-12); Lt. Morris (id., ¶ 202); Cdr. Durco (id., ¶¶ 204-06); Shawley (id., ¶¶ 207-08); and CHCA Vihlidal (id., ¶ 213).

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[1] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[2]  Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

---

[1] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[2] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).  The mere fact that an adverse action occurs after a

As to the aforementioned Defendants, Plaintiff alleges that they intercepted and destroyed his grievances and requests to staff members and threatened him with physical harm if he were to file more.  Plaintiff states that this occurred on more than one occasion but he does not give a specific (or even general) date in which this alleged retaliation occurred.  Instead, he identifies a date range encompassing more than two-and-a-half years, part of which is clearly barred by the statute of limitations.  Nevertheless, he fails to state a claim.

While the filing of a grievance is protected under the First Amendment right to petition the government for redress of grievances, *see* Fantone v. Latini, 780 F.3d 184, 194 (3d Cir. 2015), neither the United States Supreme Court nor the Third Circuit Court of Appeals has held that the mere threat of harm in the official-detainee setting can be a sufficient adverse action, Wilson v. Zielke, 382 F. App'x 151, 153 (3d Cir. 2010).[3]  To the contrary, courts in this Circuit generally conclude that mere threats do not amount to adverse action.  *See*, *e.g.*, Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that "verbal threats and few gestures of racial harassment Dunbar allegedly encountered are not sufficiently adverse to support a retaliation claim under the circumstances of this case"); Burgos v. Canino, 358 F. A'ppx 302, 306 (3d Cir. 2009) ("[T]hreats alone do not constitute retaliation."); Sanders v. Derose, 2015 WL 5895492, at *4 (M.D. Pa. Sept. 30, 2015) ("Courts in this circuit have consistently held that verbal threats do not constitute 'adverse action' for the purpose of a retaliation claim.").  *But see*

---

complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See* Lape v. Pennsylvania, 157 F. App'x. 491, 498 (3d Cir. 2005).

[3] The Third Circuit has hinted at the fact that a threat could be sufficient to support a First Amendment retaliation claim if it dissuaded a plaintiff from engaging in the protected action in the future.  *See* Kundratic v. Thomas, 407 F. App'x 625, 628 (3d Cir. 2011) (citing Virginia v. Hicks, 539 U.S. 113, 119 (2003)).  In this case, however, Plaintiff was clearly not deterred from filing grievances after the alleged threats as evidenced by the grievances and appeals he attached to his Amended Complaint that was filed on August 16, 2016, and that post-date the alleged retaliatory threats.  (ECF No. 58).

Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."); Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994) (threat to retaliate against prisoner was sufficient action to establish First Amendment violation).  While some courts in this Circuit have held that verbal threats combined with some sort of other harm, such as denial of medical care, can constitute an adverse action for purposes of a retaliation claim, *see*, *e.g.*, Diaz-Cruz v. Symons, 2016 WL 6248025, at *16 (M.D. Pa. Oct. 26, 2016), this is not the case with Plaintiff who alleges nothing more than verbal threats of harm.  As such, it is recommended that his retaliation claims be dismissed.

**2.  <u>Access to Court</u>**

The allegations in Plaintiff's Second Amended Complaint (ECF No. 76) regarding instances of denial of access to court involve Defendants Lt. Barkefelt (<u>id.</u>, ¶¶ 199-200) and Lt. Morris (<u>id.</u>, ¶ 201).  To establish a cognizable access to courts claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a claim.  Lewis v. Casey, 518 U.S. 343, 352-54 (1996).  Moreover, the claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement.  Id. at 355 ("Impairment of any other litigating capacity is simply one of the incidental . . . consequences of conviction and incarceration.").

Plaintiff alleges that Defendants Barkefelt and Morris denied him his indigent packages, which consist of fifty sheets of writing paper, and that they did so twice a month while he was litigating <u>Washington v. Folino</u>, *et al.*, No. 2:11-cv-1046 (W.D. Pa.).  He claims that the denial of his indigent packages forced him to draft his pleadings in small print and precluded him from

drafting an amended complaint that was compliant with Federal Rules of Civil Procedure 8. He claims that both of these things lead to his case being dismissed. Plaintiff, however, is incorrect.

Plaintiff initiated Washington v. Folino, et al., No. 2:1-cv-1046 (W.D. Pa.) on August 17, 2011, with the filing of a 41-page complaint that named fifty-nine defendants. Plaintiff was immediately directed to and given instruction on how to file an amended complaint, and two years and forty-seven pages of docket entries later, Plaintiff finally presented the Court with a 174-page amended complaint that did not remotely follow the Court's instructions. While Plaintiff is correct that his handwriting was minutely small, and he himself admitted that it was due to the limited amount of writing paper available to him, it appears that writing paper is actually one thing Plaintiff seemed to have in abundance. In fact, his response in opposition to the defendants' motions to dismiss in that case (which ranged in length from 7 to 14 pages) was over 200 pages. On March 4, 2014, this Court granted the defendants' motions to dismiss for Plaintiff's failure to file an amended complaint that complied with the Federal Rules of Civil Procedure, and the Third Circuit affirmed on appeal finding that Plaintiff's 174-page amended complaint was anything but simple, concise and direct as required by Federal Rule of Civil Procedure 8. See Washington v. Warden SCI-Greene, et al., No. 14-1880 (3d Cir. June 18, 2015). The Third Circuit also stated that the amended complaint was "so excessively voluminous and unfocused as to be unintelligible, and defie[d] any attempt to meaningfully answer or plead to it." Id.

Plaintiff cannot fault Defendants Barkefelt or Morris for the dismissal of his case. Such dismissal was attributed to his own failure to follow the rules and directives of this Court. As such, Plaintiff's access to court claim should be dismissed.

## 3. **Free Exercise of Religion**

The allegations in Plaintiff's Second Amended Complaint (ECF No. 76) regarding instances of alleged violations of his right to practice his religion involve Defendants CO Bennett (id., ¶¶ 187-91); CO Hendricks (id., ¶ 187); CO Comer (id., ¶¶ 192-93); CO Coddy (id., ¶ 194); CO Tait (id., ¶ 195); Lt. Williams (id., ¶¶ 196-97); Sgt. Crable (id., ¶ 198); and CO Hegeter (id., ¶ 198). Plaintiff states that these Defendants either personally denied him access to his religious literature needed to conduct his weekly worship or witnessed and failed to correct other Defendants denying him access to his religious literature. Defendants correctly note that Plaintiff identifies 10 isolated dates over a period of 100+ weeks[4] when he supposedly was not given weekly access to his property to exchange his reading materials.[5]

While prisoners have a First Amendment right to practice their religion, Bell v. Wolfish, 441 U.S. 520, 544 (1979), it is lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See* Turner v. Safley, 482 U.S. 78, 89 (1987); *see also* O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security"). "To establish a free exercise violation, [a plaintiff] must show that the [defendant(s)] burdened

---

[4] July 13, 2013; July 20, 2013; August 3, 2013; August 10, 2013; May 2, 2014; May 10, 2014; May 17, 2014; July 5, 2014; April 19, 2015; May 24, 2015. (ECF No. 76, ¶¶ 187-98.)

[5] Plaintiff states that he is a member of the Children of the Sun Church which dictates daily study from four different "spiritually inspired afrokentrik (sic) books or literature." (ECF No. 76, ¶ 47.) He further states that he had a prior settlement in 2009 where the DOC agreed to provide him with weekly access to his property in order to exchange his reading materials. Id., ¶ 48; *see* Washington v. Klem, No. 01-2432, ECF No. 172-2 (M.D. Pa. Mar. 27, 2009). It is assumed that when Plaintiff says he was denied "weekly worship" in ¶¶ 187-98 of his Second Amended Complaint, he is referring to the contractual agreement whereby he is allowed weekly access to exchange property.

the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interest." Heleva v. Kramer, 330 F. App'x 406, 408 (3d Cir. 2009) (citing Turner, 482 U.S. at 89).

Plaintiff has alleged that he was denied his First Amendment right to practice his religion in ten instances over a period of almost two years. Notwithstanding the fact that the alleged violations that occurred on July 13, 2013, July 20, 2013 and August 3, 2013, are likely barred by the statute of limitations, Plaintiff fails to state a cause of action because the relatively small number of isolated, random incidents of interference with his right to practice his religion over such a long period of time cannot support a First Amendment claim. *See*, *e.g.*, Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009) (Isolated acts in which prison officials failed to approve an inmate's requests for religious meal accommodations in a timely fashion did not amount to free-exercise violations because the "actions were, at most, isolated acts of negligence, not pervasive violations of [the inmate's] right to free exercise of religion . . . [A]n isolated act of negligence w[ill] not violate an inmate's First Amendment right to free exercise of religion."); Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (unavailability of pork-free meals on three out of 810 occasions constituted only a *de minimis* burden on prisoner's religion and did not violate Free Exercise Clause); Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998) ("Canell's only allegation is that on some occasions Lightner interfered with his prayer activities by preaching about Christian gospel. While Lightner's evangelizing may have constituted an intrusion upon Canell's prayers on some occasions during the brief period involved, we agree with the district court's conclusion that these intrusions were 'relatively short-term and sporadic' and did not constitute a substantial interference.")). *See also* Wilson v. Woodbourne Correctional Facility, 2012 WL 1377615, at *3 (N.D.N.Y. Mar. 21, 2012) (collecting cases);

Evans v. Albany Cty. Corr. Fac., 2009 WL 1401645, at *8 (N.D.N.Y. May 14, 2009) (receipt of "wrong meals" approximately 18 out of 354 times is *de minimis* and not actionable under First Amendment); Odom v. Dixon, 2008 WL 466255, at *11 (W.D.N.Y. Feb. 15, 2008) (failure to provide inmate kosher meals on 7 out of 33 occasions not sufficient under First Amendment or RLUIP[6]).

Furthermore, after reviewing the Plaintiff's grievances, it appears that there was no conscious or intentional interference with his free exercise rights. For example, it seems that on May 24, 2015, Plaintiff was offered his property exchange but refused it because it was not occurring when he wanted. (ECF No. 79-1.) It also appears that there was a brief time in April/May 2014 when staff did not allow the weekly exchange due to a misunderstanding, believing that he was only entitled to an exchange every 30 days, like other RHU inmates. (ECF Nos. 58-11, 79-2.) Additionally, for the alleged denial of religious material/exchange of property that occurred on August 10, 2013, and July 5, 2014, it appears that Plaintiff did not get his religious literature because he did not comply with the correct procedures necessary to receive his weekly property exchange. (ECF Nos. 58-9, 58-13.)

For all of these reasons, Plaintiff has failed to state a claim for a violation of his right to his free exercise of religion under the First Amendment. It should therefore be dismissed.

---

[6] The Religious Land Use and Institutionalized Persons Act ("RLUIPA") also protects inmates' religious rights. RLUIPA prohibits the government from imposing a substantial burden on a prisoner's religious exercise unless the burden is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc-l(a). In this case, Plaintiff never mentions RLUIPA, but to the extent that the Court could interpret such a claim, it would also be subject to dismissal. Plaintiff's inability to do a property exchange in order to gain access to his religious literature on ten isolated instances over a two-year period was, at worst, an inconvenience, not a substantial burden.

### 4. **Equal Protection**[7]

The allegations in Plaintiff's Second Amended Complaint (ECF No. 76) regarding instances of alleged violation of equal protection involve Defendants Dr. Jin (id., ¶¶ 89, 222); Dr. Dascani (id., ¶ 222); Dr. Park (id., ¶ 222); Lt. Williams (id., ¶¶ 216, 224); PA Mattes (id., ¶ 222); PA Mwaura (id., ¶ 222); Sgt. Crable (id., ¶ 216); CO Bennett (id., ¶ 216); CO Hendricks (id., ¶ 216); CO Coddy (id., ¶ 216); CO Hegeter (id., ¶ 216); CO Tait (id., ¶ 216); CO Comer (id., ¶¶ 216, 222); Gilmore (id., ¶¶ 217, 224); Shawley (id., ¶¶ 217, 224); Cdr. Durco (id., ¶¶ 217, 224); Lt.Barkefelt (id., ¶¶ 217, 224); Lt. Morris (id., ¶¶ 217, 224); CHCA Vihlidal (id., ¶ 224); Sgt. Smith (id., ¶ 223); CO Nelson (id., ¶ 223); CO Oswald (id., ¶ 223); CO Farrier (id., ¶ 223); CO Stump (id., ¶ 223); CO Suhan (id., ¶ 223); and CO Dennison (id., ¶¶ 217, 218, 223).

The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); *see also* Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

In analyzing an equal protection claim, a court must consider what interest or type of classification is involved. Plaintiff does not allege that he is a member of a protected class, and prisoners are not a protected class of individuals. Abdul-Akbar v. McKelvie, 239 F.3d 307, 317

---

[7] Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has construed the Fifth Amendment's Due Process Clause as containing an equal protection guarantee. *See* Edmonson v. Leesville Concrete Co., 500 U.S. 614, 616 (1991). Accordingly, "Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment." Abdul–Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001).

(3d Cir. 2001).  Nor does Plaintiff's equal protection claim implicate a fundamental right.

Consequently, in order to be successful in his equal protection claim, he must show that he has

been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment.  Phillips v. County of Allegheny. 515 F.3d 224, 243 (3d Cir.

2008)

Plaintiff alleges that Defendants treated him differently than other inmates on G Block in

the following ways: (1) he was not provided with his religious literature to practice his religious

beliefs; (2) he was denied access to the court; (3) his grievances were not processed; (4) his

meals were tampered with; (5) he was retaliated against for using the grievance system; (6) he

was denied the same standard of medical care; and (7) he was not provided with the same level

of general care, safety and security.

While Plaintiff alleges that Defendants treated him differently than the other inmates on

his block, he does not offer a reason as to why and has thus failed to allege that Defendants acted

with a discriminatory purpose.  *See* McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (a claimant

allegation a violation of the right to equal protection has the burden to prove the "existence of

purposeful discrimination."); Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.,

587 F.3d 176, 196 (3d Cir. 2009).  Defendants are correct that Plaintiff simply re-asserts his

other claims and concludes that Defendants also violated his right to Equal Protection in the

process.  He does not provide a basis for this claim and mere conclusory statements do not state a

cause of action.  Therefore, it is recommended that it be dismissed.

5.  **Sexual Assault and Harassment**

The allegations in Plaintiff's Second Amended Complaint (ECF No. 76) regarding instances of sexual assault and harassment span from July 8, 2013 to July 14, 2015. They involve alleged misconduct by Dr. Jin (id., ¶¶ 89-91, 94-97, 99, 101, 103, 110, 122); Dr. Dascani (id., ¶¶ 12728, 135-36, 139); Sgt. Smith (id., ¶¶ 174-80; CO Oswald (id., ¶¶ 174-80, 184); CO Nelson (id., ¶ 181); CO Suhan (id., ¶¶ 182-83); CO Farrier (id., ¶ 185); and CO Stump (id., ¶ 185).

Plaintiff claims that Defendants have violated the Eighth Amendment by repeatedly sexually assaulting and harassing him for two straight years. "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) (quoting Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Banks v. Rozum, 639 F. App'x 778, 782 (3d Cir. 2016) (quoting Crawford v. Cuomo, 795 F.3d 252, 257 (2d Cir. 2015).

The Third Circuit Court of Appeals has not specifically addressed the circumstances under which a correctional officer can be held liable for the sexual harassment of an inmate; however, other circuits have addressed this issue. "To prevail on a constitutional claim of sexual harassment, an inmate must . . . prove, as an objective matter that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." Freitas v. Vault, 109 F.3d 1335, 1338 (8th Cir. 1997). Although sexual abuse of a prisoner by a correctional officer serves no legitimate penological purpose, Courts of Appeals have held that sexual harassment in the absence of contact or

touching does not establish an Eighth Amendment violation.  *See*, *e.g.*, Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000).  Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim.  *See* Manon v. Garrison, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012).  Rather, physical sexual assault or threats of physical assault is required for the objective element to be met.  *See* Chambliss v. Jones, 2015 WL 328064 (M.D. Pa. Jan. 26, 2015).

       Additionally, courts have found that isolated instances of inappropriate conduct by prison officials do not violate an inmate's constitutional rights.  *See*, *e.g.*, Hughes v. Smith, 237 F. App'x 756, 759 (3d Cir. 2007) (holding that the inmate had not alleged an Eighth Amendment violation where the correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); Washington v. Harris, 186 F. App'x 865, 866 (11th Cir. 2006) (holding that inmate failed to state Eighth Amendment claim where a prison guard "crept up behind [the prisoner inmate] while he was working," grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him); Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) ("a female guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury"); Jackson v. Madery, 158 F. App'x 656, 661 (6th Cir. 2005) (holding that the plaintiff's allegations that a guard grabbed and rubbed his buttocks in a degrading manner during a shakedown in the food area was insufficient to establish an Eighth Amendment violation); Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002) (asking inmate to have sex and masturbating in front of inmate not sufficiently serious); Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998) (brief unwanted touch on buttocks not accompanied by sexual comments or banter insufficient to state Eighth

Amendment claim); Barney v. Pulsipher, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state an Eighth Amendment claim); Boddie v. Schnieder, 105 F.3d 857, 861 (2nd Cir. 1997) (a small number of incidents alleging verbal harassment, touching and pressing without consent not sufficiently serious). *See also*, *e.g.*, Baylor v. Pennsylvania Department of Corrections, 2013 WL 5177573 (M.D. Pa. Sept. 13, 2013) (allegations that officers used racial and profane language and asked plaintiff to perform specific sexual acts does not rise to the level of an Eighth Amendment violation); Young v. Brock, 2012 WL 385494, at *4 (D. Colo. Feb.7, 2012) (holding that the plaintiff's allegations that he was subjected to unnecessary and unwelcomed sexual touching by a prison guard in the course of a single pat-down search did not state a claim under the Eighth Amendment, particularly where the plaintiff conceded that the pat-down had a penological purpose); Pantusco v. Sorrell, 2011 WL 2148392, at *7-8 (D.N.J. May 31, 2011) (holding that the plaintiff's Eighth Amendment claim failed because a single instance of groping during a routine pat-down frisk did not amount to cruel and unusual punishment); Escobar v. Reid, 668 F.Supp.2d 1260, 1278, 1295-96 (D. Colo. 2009) (holding that a guard's alleged suggestive, sexual touching of an inmate did not state a constitutional violation); Williams v. Anderson, 2004 WL 2282927, at *4 (D. Kan. Sept. 7, 2004) (finding no Eighth Amendment violation where a prison guard grabbed a pre-trial detainee's buttocks, exposed his genitals to the inmate plaintiff, and made crude sexual remarks); Jones v. Culinary Manager II, 30 F.Supp.2d 491, 497 (E.D. Pa. 1998) (a single incident alleging that a guard pinned plaintiff to box and ground his pelvis against plaintiff's buttocks while threatening sex not sufficiently serious); Harris v. Zappan, 1999 WL 360203 (E.D. Pa. May 28, 1999) (allegations of one instance of sexually explicit comments combined with fondling and rubbing on thighs and

breasts not sufficiently serious for an Eighth Amendment violation); Jones v. Culinary Manager II, 30 F. Supp.2d 491, 497 (E.D. Pa. 1998) (grinding on buttocks with penis while threatening to have sex with inmate not sufficiently serious); Williams v. Kane, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (standing unnecessarily close and grabbing plaintiff's buttocks insufficient to state Eighth Amendment claim); Duncan v. Keane, 1995 WL 649931, at *6 (S.D.N.Y. Nov. 6, 1995) (general allegation of sexual harassment coupled with single incident of feeling buttocks insufficient).

Instead, courts have indicated that an inmate can only state an Eighth Amendment claim against a correctional officer for sexual harassment by alleging severe or repetitive sexual abuse. See, e.g., Schwenk v. Hartford, 204 F.3d 1187 (9th Cir.1999) (repeated requests for oral sex and attempted rape of inmate by prison guard may establish Eighth Amendment claim); United States v. Walsh, 194 F.3d 37 (2d Cir.1999) (corrections officer who repeatedly steps on inmate's penis to wantonly inflict pain violates inmate's right to be free of cruel and unusual punishment); Berry v. Oswalt, 143 F.3d 1127 (8th Cir.1998) (rape and harassment of inmate, including propositions, sexual comments, and attempts to perform non-routine pat-downs violated inmate's Eighth Amendment right to be free from cruel and unusual punishment).

Plaintiff has alleged a pattern of repeated unwanted sexual harassment and abuse by the Defendants from July 2013 to July 2015. However, his allegations reveal only three instances of unwanted sexual contact between him and the Defendants. These include allegations that on August 1, 2013, Defendant Oswald pressed his erect penis against Plaintiff's thigh, inserted his finger into Plaintiff's rectum, and that Defendant Smith inserted the end of his riot stick into Plaintiff's rectum all the while both mimicking the sound of a woman having an orgasm and referring to Plaintiff as "honey," "sweetheart," and "baby." (ECF No. 76, ¶¶ 176-80.) Plaintiff

also alleges that on April 2, 2015, Defendant Oswald squeezed Plaintiff's buttocks while mimicking the sound of a woman having an orgasm and stated that it was as "soft as cotton," then he inserted his finger into Plaintiff's rectum. (ECF No. 76, ¶ 184.) Finally, Plaintiff alleges that on July 14, 2015, Defendants Farrier and Stump pressed their erect penises against his body, referred to him as "darling" and "honey bunch" and mimicked the sound of a woman having an orgasm. (ECF No. 76, ¶ 185.) These allegations of sexual harassment and assault by Defendants Oswald, Smith, Farrier and Stump, which include inappropriate and unwanted contact that appears to have been done maliciously and sadistically and without any legitimate penolgoical interest, should survive dismissal.

The remainder of Plaintiff's sexual harassment allegations, while certainly outrageous, do not involve any sexual contact between himself and the Defendants. Instead, they allege that Defendants Dr. Jin and Dr. Dascani instructed Plaintiff to remove his clothes and sometimes lie on the floor, bend at the waist, and spread his butt cheeks, and while he was doing this they would make lewd comments and sometimes touch themselves. (ECF No. 76, ¶¶ 89-91, 94-97, 99, 101, 103, 110, 122, 127-28, 135-36, 139.) He also alleges similar conduct by Defendants Nelson and Suhan. (ECF No. 76, ¶¶ 181-83.) Based on the authority cited above, this kind of purported harassment, although offensive, does not rise to the level of a constitutional violation. *See* DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (Mere verbal sexual harassment without accompanying physical contact is not enough to state a claim for an Eighth Amendment violation); Murray v. United States Bureau of Prisons, 106 F.3d 401 (6th Cir.1997) (offensive remarks regarding a transsexual prisoner's appearance, lifestyle, and presumed sexual preference do not state an Eighth Amendment claim); Howard v. Everett, 208 F.3d 218, 2000 WL 268493, at *1 (8th Cir. 2000) (non precedential table decision) ("sexual harassment, absent contact or

touching, does not constitute cruel and unusual punishment").  Without allegations of direct

physical contact, Plaintiff's claims of sexual harassment against Defendants Dr. Jin, Dr. Dascani,

Nelson and Suhan do not state a constitutional violation and should therefore be dismissed.

### 6.  **Denial of Medical Care**

The allegations in Plaintiff's Second Amended Complaint (ECF No. 76) regarding

instances of denial of medical care span from August 29, 2013 to July 8, 2015.  They involve

alleged misconduct by Dr. Jin (id., ¶¶ 88, 93-95, 98, 101, 104, 121-22, 148); Dr. Park (id. 76, ¶¶

92, 100, 105-20, 123, 126, 129-34, 138, 140, 143, 149-53); Dr. Dascani (id., ¶¶ 127-28, 135-36,

139, 146-47); PA Comer (id., ¶ 102); PA Mattes (id., ¶¶ 124-25, 137, 141-42, 144-45, 156-58,

160-62, 165-67); PA Mwaura (id., ¶¶ 141-42, 144-48, 154-55, 159, 163-64, 168-69); and CHCA

Vihlidal (id., ¶¶ 209-10).

The Eighth Amendment proscription against cruel and unusual punishment requires that

prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97,

103-05 (1976).  In order to set forth a cognizable claim, an inmate must allege (1) a serious

medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to

that need.  Id. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is

deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and

fails to take reasonable steps to avoid the harm.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A prison official may manifest deliberate indifference by "intentionally denying or delaying

access to medical care."  Estelle, 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so

long as the treatment provided is reasonable.  Harrison v. Barkley, 219 F.3d 132, 138-40 (2d Cir.

2000).  An inmate's claims against members of a prison medical department are not viable under

§ 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf.  Estelle, 429 U.S. at 107.  Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation.  White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also* Daniels v. Williams, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional violation).  Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See* Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Plaintiff alleges that from August 2013 to July 2015, these Defendants refused to treat him while he was in pain and experiencing severe medical issues.  For example, he claims that Dr. Park and Dr. Jin would consistently walk away from his cell leaving him on the floor gasping for air, clutching his chest, unable to stand, struggling to speak, in agonizing pain and discomfort and begging for medical care.  He also claims that they would laugh at his pain, flick him off and make comments like "I wish you would hurry up and die," "I will not give you medical care, so stop asking," "I know you have life threatening health problems, but I don't give a damn if they cause your death," "you are shit out of luck if you are expecting me to help you."  (ECF No. 76, ¶¶ 88, 92-95, 98, 100-101, 104-23, 126-36, 138-40, 143, 146-53.)  Plaintiff claims that Dr. Dascani also walked away from him and told Plaintiff that he would not treat him.  (ECF No. 76, ¶¶ 127-28, 135-36, 139, 146-47.)

As to Defendants PAs Mattes and Mwaura, Plaintiff alleges that they also walked away from his cell refusing to treat him while he was too weak to stand, couldn't breath and begging for medical care.  He states that they too would flick him off and make comments such as "you think you're experiencing pain and discomfort . . . just wait until we start," and "you're in pain,

and I'm glad of it."  (ECF No. 76, ¶¶ 124-25, 137, 141-42, 144-48, 154-69.)  Finally, as to PA Comer, Plaintiff alleges that he told Plaintiff that he needed immediate emergency medical care but then walked away leaving Plaintiff begging for medical care and struggling to breathe.  (ECF No. 76, ¶ 102.)  He alleges that Defendant Vihlidal did the same thing on three separate occasions and walked away flicking him off.  (ECF No. 76, ¶¶ 209-10.)

Viewed in the light of the liberal pleading standards afforded to *pro se* litigants, and taking as true all of Plaintiff's allegations, the undersigned finds Plaintiff has set forth sufficient facts to state a cause of action against Defendants Dr. Jin, Dr. Park, Dr. Dascani, PA Comer, PA Mattes, PA Mwaura and CHCA Vihlidal.  Plaintiff has alleged that he suffers from a myriad of serious illnesses and/or ailments (ECF No. 76, ¶ 70) and that the aforementioned Defendants intentionally denied him medical care.  As such, the Defendants' Motions to Dismiss should be denied as to Plaintiff's Eighth Amendment denial of medical care claims.

### 7.  **Amendment of Complaint**

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).  The undersigned is cognizant of these holdings, but finds that allowing for amendment by Plaintiff would be futile as to the claims for which dismissal is recommended.

### III.  **CONCLUSION**

For the reasons stated herein, it is respectfully recommended that the Motion to Dismiss Plaintiff's Second Amended Complaint filed by the Medical Defendants (ECF No. 89) be granted in part and denied in part, and it is recommended that the Motion to Dismiss Plaintiff's Second Amended Complaint filed by the Corrections Defendants (ECF No. 78) be granted in part and denied in part. The Motions should be granted as they relate to Plaintiff's retaliation, access to court, free exercise of religion, and equal protection claims, which should all be dismissed with prejudice. The Motions should also be granted as they relate to the sexual harassment claims against Defendants Dr. Jin, Dr. Dascani, Nelson and Suhan, which also should be dismissed with prejudice. The Motions should be denied as they relate to Plaintiff's sexual harassment/assault claims against Defendants Oswald, Smith, Farrier and Stump, and should also be denied as to Plaintiff's denial of medical care claims against Defendants Dr. Jin, Dr. Park, Dr. Dascani, PA Comer, PA Mattes, PA Mwaura, and CHCA Vihlidal.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. §636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, Plaintiff shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Plaintiff's failure to file timely objections will constitute a waiver of his appellate rights.

Dated: August 31, 2017

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Henry Unseld Washington
       AM-3086
       SCI Somerset
       1600 Walters Mill Rd

Somerset, PA  15510

Counsel for Defendants
(Via CM/ECF electronic mail)