**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HENRY UNSELD WASHINGTON, | } | |
| | } | No. 2:15-cv-01031-CB |
| Plaintiff, | } | |
| | } | Judge Bissoon |
| vs. | } | |
| | } | |
| J.M. SMITH, T.S. OSWALD, | } | |
| D. FARRIER and M. STUMP, | } | |
| | } | *Electronically Filed.* |
| Defendants. | } | |

**BRIEF IN SUPPORT OF CORRECTIONS DEFENDANT'S MOTION FOR JUDGMENT**
**AS A MATTER OF LAW AND/OR FOR NEW TRIAL, OR, IN THE ALTERNATIVE,**
**REMITTITUR TO REDUCE THE EXCESSIVE PUNITIVE DAMAGE AWARD**

Pursuant to Federal Rules of Civil Procedure 50(b), 59(a) and 59(e), Defendant Oswald

respectfully submits this Brief in Support of his Motion for Judgment as a Matter of Law or New

Trial or Remittitur to Reduce the Excessive Punitive Damages awarded in this case.

**I.      Introduction**

Henry Unseld Washington ("Plaintiff") is an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC") and is currently confined at the State Correctional Institution

at Somerset.  Plaintiff initiated this prisoner civil rights action, *pro se*, on August 7, 2015.  See

[ECF 1].  Within his complaint, Plaintiff alleged, *inter alia*, claims that Defendants J.M. Smith,

T.S. Oswald, D. Farrier and M. Stump violated his rights under the Eighth Amendment by sexually

abusing him on three separate occasions, while Plaintiff was confined at the State Correctional

Institution at Greene.  Defendant Oswald was named in two of the three incidents, the first

occurring on August 1, 2013, and the second on April 2, 2015.

Relevant to the present motion, the Court issued a Final Pretrial Order [ECF 216] on March

7, 2023.  On June 12, 2023, this case proceeded to a trial by jury against Defendant Oswald and

the others.  See [ECF 253-254].  At the close of Plaintiff's case a Rule 50 motion was made on behalf of all Defendants and was granted in part, with judgment subsequently entered on behalf of all defendants except Defendant Oswald.  See [ECF 256].

On June 14, 2023, the case was submitted to the jury on the two claims against Defendant Oswald, being the August 1, 2013 claim and April 2, 2015 claim.  See [ECF 255, 257].  On the August 1, 2013 claim, the jury found for Plaintiff and awarded him $20,000 in compensatory damages and $25,000 in punitive damages.  See [ECF 257, 262].  On the April 2, 2015 claim, the jury found for Plaintiff and awarded him $20,000 in compensatory damages and $200,000 in punitive damages.  Id.  This Court accordingly entered judgment that same day.  See [ECF 263].

Defendant Oswald now renews his motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) within 28 days of the entry of judgment. "In order to prevail, the moving party must show that the jury's findings, presumed or expressed, are not supported by substantive evidence, or if they [are], that the legal conclusions implied [by] the jury's verdict cannot in law be supported by the findings."  Moore v. Susquehanna Area Regional Airport Authority, No. 2-0535, 2005 WL 2430790, at *2 (M.D.Pa. 2005)(internal citation omitted).

Furthermore, a party may file a motion to alter or amend a judgment no later than 28 days after the entry of the judgment.  See Fed. R.Civ. P. 59(e). "The rationalization for, and use of, the remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive."  Spence v. Board of Education of Christina School District, 806 F.2d 1198, 1202 (3d Cir. 1986).

Defendant Oswald is entitled to judgment as a matter of law on Plaintiff's claim arising on April 2, 2015, for all the reasons raised in his Rule 50(a) motion.  Plaintiff's claims lack both factual and legal sufficiency.  And under Federal Rule of Civil Procedure 59, "the district judge

ha[s] the right, and indeed the duty, to weigh the evidence as [s]he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence." See, e.g., Greenleaf v. Garlock, Inc., 174 F.3d 352, 365 (3d Cir. 1999); American Bearing Co v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir. 1984).

The Third Circuit has stated that "punitive damages in general represent a limited remedy, to be reserved for special circumstances." Savarese v. Agriss, 883 F.2d 1194, 1205 (3d Cir. 1989)(citing Cochetti v. Desmond, 572 F.2d 102, 105-106 (3d Cir. 1978)). "[D]espite its utility as a deterrent, the punitive damage remedy must be reserved…for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Cochetti v. Desmond, 572 F.2d at 106.

The Supreme Court has instructed trial courts reviewing a punitive award to consider three main guideposts:  "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages award by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 418 (2003). See also Exxon Shipping Co. v. Baker, 554 U.S. 471, 501 (2008).  First, Defendant Oswald's conduct was not so reprehensible as to support an extreme punitive damages award.  Second, the jury determined that Plaintiff suffered no significant or substantial compensable harm as.  And third, there are no comparable cases in which punitive damages have been awarded.  For all those reasons, the Court should reduce the punitive damages award.

The jury trial in this matter was held June 12, 2023 through June 14, 2023.  As to the April 2, 2015 claim, the jury found Defendant Oswald violated Plaintiff's Eighth Amendment rights and awarded $20,000 in compensatory damages and $200,000 in punitive damages. The jury's $200,000 award of punitive damages against Defendant Oswald cannot stand. There is no explanation or evidentiary support for this extreme amount.

## II.     Standard of Review

### A.  Federal Rule of Civil Procedure 50(b): Renewed Motion for Judgment as a Matter of Law

Where, as here, the Court denies a party's Rule 50(a) motion, "the court is considered to have submitted the action to the jury subject to the courts later deciding the legal questions raised by the motion."  Fed. R.Civ. P. 50(b).  In the event an adverse judgment is entered, the movant may renew the motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  "In order to prevail, the moving party must show that the jury's findings, presumed or expressed, are not supported by substantive evidence, or if they [are], that the legal conclusions implied [by] the jury's verdict cannot in law be supported by the findings."  Moore v. Susequehanna Area Regional Airport Authority, 2005 WL 2430790, *2 (M.D.Pa. 2005)(citing Valenti v. Allstate Insurance Co., 243 F.Supp.2d 221, 223 (M.D.Pa. 2003)).

### B.  Federal Rule of Civil Procedure 59: Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) provides that the Court may grant a new trial on all or some of the issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Under Rule 59, motions for a new trial must be filed within twenty-eight (28) days of the date the judgment was entered. Courts have granted motions for a new trial where: "(1) there is a significant error of law, to the prejudice of the moving

party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury." Mulero v. Walsh, 2018 WL 1084235, *3 (M.D.Pa. 2018)(citing Maylie v. National R.R. Passenger Corp., 791 F.Supp. 477, 480 (E.D.Pa.), aff'd, 983 F.2d 1051 (3d Cir. 1992).

### C. Federal Rule of Civil Procedure 59(e): Remittitur

"Under Rule 59(e), a party may seek alteration or amendment of the verdict." Borrell v. Bloomsburg University, 207 F.Supp.3d 454, 471 (M.D.Pa. 2016). "The rationalization for, and use of, the remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." Spence v. Board of Education of Christina School District, 806 F.2d 1198, 1202 (3d Cir. 1986). "The use of remittitur is committed to the sound discretion of the district court judge." Hall v. Pennsylvania Department of Corrections, 2006 WL 2772551, *20 (M.D.Pa. 2006). "[W]hen considering and fixing a remittitur, the court is to 'consider similar cases, evaluate the evidence, determine a damages figure related to that evidence, while being mindful that the determination of that amount may not be precisely calculated." Borrell v. Bloomsburg University, 207 F.Supp.3d at 471 (quoting Evans v. Port Authority of New York, 273 F.3d 346, 352 (3d Cir. 2001).

### III. Argument

### A. Defendant's Renewed Motion for Judgment as a Matter of Law Should Be Granted Because the Evidence Does Not Support the Jury's Verdict on the Two Claims asserted against Corrections Defendant Oswald.

Defendant Oswald renews his motion for Judgment as a Matter of Law and submits that the evidence did not support the jury's verdict as to either the August 1, 2013 claim or the April 2, 2015 claim. As to both of these claims, Plaintiff's case-in-chief consisted entirely of his own testimony. That testimony has been attached to the instant motion. At the close of Plaintiff's case-

in-chief, Defendant moved for Judgment as a Matter of Law pursuant to Rule 50(a) on all claims advanced by Plaintiff.  A careful review of Plaintiff's trial testimony reveals that his Eighth Amendment claims for sexual abuse against Defendant Oswald are not supported by substantive evidence.

Initially, with regard to the August 1, 2013 claim, there was not sufficient evidence proffered by Plaintiff at trial to support the conclusion that Defendant Oswald sexually abused Plaintiff.  Indeed, the only claim asserted against Defendant Oswald was an Eighth Amendment claim for sexual abuse and the jury was appropriately instructed on such a claim at the conclusion of the evidence.  Critically, Plaintiff did not assert –and the jury was not instructed on– other Eighth Amendment claims, such as Excessive Force or Failure to Protect.

Yet, as reflected by Plaintiff's trial testimony, the only conduct specifically attributed to Defendant Oswald during the August 1, 2013 incident was that this defendant pulled on the tether attached to Plaintiff's handcuffs after Plaintiff was placed in the visiting room.  See Transcript of Jury Trial Excerpt, June 12, 2023, at 3-4.  Critically, there was no testimony from Plaintiff describing any act or form of sexual abuse perpetrated by Defendant Oswald during this incident. Thus, any verdict returned on this evidence would simply be the result of speculation as to acts of sexual abuse –if any– committed by Defendant Oswald.  Accordingly, Defendant Oswald renews his Motion for Judgment as a Matter of Law and respectfully submits that judgment should be entered in his favor and against the Plaintiff on the August 1, 2013 claim.

On the April 2, 2015 claim, Defendant Oswald submits there was no evidence proffered at trial to support the conclusion that Defendant Oswald was involved in that incident.  Again, Plaintiff's case-in-chief consisted entirely of his own testimony.  Of significance here, within his testimony, Plaintiff failed to substantively establish the identity of the corrections officer involved

in the April 2, 2015 incident.  Indeed, Plaintiff failed to identify the other three defendants at trial in any manner such that the Rule 50 motion was granted as to them in its entirety.  Within his testimony regarding the August 1, 2013 claim, there was a singular reference to Defendant Oswald, as having taken control of the tether attached to his handcuffs during the escort to the visiting room.  See Transcript of Jury Trial Excerpt, June 12, 2023, at 3.

With respect to the second incident, Plaintiff testified as follows:

> Now, the next one was -- and let me make it clear, these are not officers that was working the pod that I was on.  They came from another pod to do this escorting.  And it appeared that I was targeted by them because they didn't work this pod, although they were familiar with me.

> Now, the next -- the next allegation I'd like to make is, once again, a sergeant.  One of the guys that was in the first event had became a sergeant.  The sergeants don't usually do showers.  This is during showers that all of a sudden he appears.  And he wasn't assigned to the block.  How did he get over there?  I don't know.  But he come to get me from the shower and right away he starts.  And I'm saying, 'Don't touch me.'

> He's touching me and all up and down my back and across my rump and all up on me, making sounds like a lady.  Calling me his blackberry and sweet dark sugar and all this stuff.  Making noise.  And escorting me to my cell, I'm trying to get away from him because the last thing you want is someone to see you being treated like if somebody's having sex with you.  So by the time I get to my cell, for, like, maybe the third time, he takes a full hand on my rump in the palm of his hand.  So I'm jumping because I'm trying to keep away from him.  They got a tether they hold to you where you can't go so -- so far.  So he's saying, 'Oh, it's soft as cotton,' talking about rubbing my rear end and squeezing my rear end.

> And as I get inside the door, he takes and shoves his finger into my buttocks.  You know, as if he's trying to insert his finger into my rectum.  So he's going to spray me if I run to the back of the cell.  Plus, he has a tether on me.

> So when I go to get out -- put my hand through the wicket to get them -- for the handcuffs off, he starts again.  He ain't trying to get the handcuffs off.  He wants to poke me in the rectum.

> So that's pretty much the way that that second event happened.  And that was one of the guys that was involved in the first event.  He had became a sergeant then.

> Now, as you can see, those -- that's more than one act that occurred there in that second date there.

Transcript of Jury Trial Excerpt, June 12, 2023, at 6-7.

At no point in this testimony did Plaintiff identify Defendant Oswald as being involved in this incident.  While Plaintiff testified that "[o]ne of the guys that was in the first event had became a sergeant," he did not establish the identify of this officer.  Further, during Plaintiff's case-in-chief, he never identified Defendant Oswald –or any other defendant– by rank.  Thus, any verdict returned on this evidence would simply be the result of speculation as to the identity of this officer.  Accordingly, Defendant Oswald renews his Motion for Judgment as a Matter of Law and respectfully submits that judgment should be entered in his favor and against the Plaintiff on the April 2, 2015 claim.  In the alternative, Defendant Oswald seeks a new trial on the ground that the verdict was against the weight of the evidence based on the foregoing record.

### B.  The Punitive Damage Award on the April 2, 2015 claim is Grossly Excessive and Should be Reduced, as a Matter of Law.

"[C]ourts recognize that the legal system has an obligation to ensure awards are fair, reasonable, proportional, and predictable, and that excessive punitive awards have the potential to inflict great harm on the defendant and society.  These concerns are emphasized when a plaintiff is fully compensated, and when the burden does not fall on the wrongdoer himself, but on the taxpaying public."  Milfort v. Prevete, 2014 WL 988768, *7 (E.D.N.Y. 2014)(citing Payne v. Jones, 711 F.3d 85 (2d Cir. 2013)).

In this case, with regard to the April 2, 2015 claim, the jury awarded Plaintiff $200,000 in punitive damages –ten times the compensatory award of $20,000.[1]  This punitive award is impermissibly excessive under both due process and federal common law and must be reduced.

---

[1]  In the event the Court declines to grant Defendant Oswald's motion for judgment on the August 1, 2013 claim, no claim is made as to the propriety of the award of punitive damages because the 5:4 ratio of that award is consistent with punitive damage awards that have been upheld by the courts.

See Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008)(hereinafter "*Exxon*"); State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003) (hereinafter "*State Farm*").

In *Exxon*, a maritime case which involved federal common law –also the authority for punitive damages in Section 1983 cases like this one– the Supreme Court held that federal common law contains "more rigorous standards than the constitutional limit" on punitive damage awards. Exxon, 554 U.S. at 506.  The constitutional limit, the Court has held, should rarely exceed "a single-digit ratio between punitive and compensatory damages," and "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety."  State Farm, 538 U.S. at 425.  But in *Exxon*, where federal common law governed punitive damages, the Supreme Court held that "a 1:1 ratio, which is above the median award, is a fair upper limit."  554 U.S. at 513.

This Court has a duty to scrutinize jury awards of punitive damages to ensure they are not excessive, in violation of federal common law and due process.  "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."  State Farm, 538 U.S. at 416.  In addition, federal common law prohibits excessive punitive damage awards as well.  See Exxon, 554 U.S. 471.  Here, the jury's award of $200,000 in punitive damages based on a $20,000 compensatory damage award is grossly excessive such that it violates due process and federal common law, and accordingly must be reduced.

The Third Circuit has stated that "punitive damages in general represent a limited remedy, to be reserved for special circumstances."  Savarese v. Agriss, 883 F.2d 1194, 1205 (3d Cir. 1989)(*citing* Cochetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir. 1978)).  "[D]espite its utility as a deterrent, the punitive damage remedy must be reserved, we think, for cases in which the

*defendant's conduct* amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Cochetti v. Desmond, 572 F.2d at 106 (emphasis added).

A trial court reviewing a punitive award should generally focus on three main guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages award by the jury and the civil penalties authorized or imposed in comparable cases." State Farm, 538 U.S. at 418; see also Exxon, 554 U.S. at 501.

**1. While the jury's verdict found that Plaintiff's Constitutional rights were violated, Defendant's conduct falls short of extreme levels of reprehensibility.**

The first guidepost to determining whether punitive damages are excessive is the degree of reprehensibility.  But even if a jury has returned a verdict based on finding a violation of the plaintiff's rights, it is still possible –indeed, it is the Court's duty– to make distinctions between the present case and other comparable Section 1983 cases with punitive awards.  Reprehensibility has to be considered on a spectrum, which can range up to extreme circumstances involving violations that, for example, are committed or encouraged by superior officials, or involve acts that are purely sadistic, or that result in a person's death.  See Exxon, 554 U.S. at 493 ("Under the umbrellas of punishment and its aim of deterrence, degrees of relative blameworthiness are apparent").

The analysis of reprehensibility has been distilled into five main factors:  whether "[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." CGB Occupational

Therapy, Inc., 499 F.3d 184, 190 (3d Cir. 2007)(*quoting* State Farm, 538 U.S. at 419).  The evidence in this case cannot support the necessary level of "reprehensibility" to support the extreme award of punitive damages returned by the jury.

 While the jury's verdict may support a determination on the first two factors –although the testimony directed to Defendant Oswald's specific conduct is sparse– on balance, the record does not support a finding of reprehensibility at the level required to support the amount of the punitive damages award.  Indeed, there was no record evidence that Plaintiff was financially vulnerable nor was there evidence that the possibility of such vulnerability played a role in the events at issue.  This was not a case involving attempted extortion or other misconduct involving "behavior driven primarily by desire for gain," which the Supreme Court has called one of the "earmarks of exceptional blameworthiness." Exxon, 554 U.S. at 513.

 Further, on the record of this case, although the jury also found Defendant Oswald liable for a prior incident some two years earlier (and, as argued *infra*, there was no testimony by Plaintiff that Defendant Oswald sexually abused him in that incident), there was no other indication of recidivism.  Indeed, it would be improper for the jury to base an award of punitive damages on any suggestion of misconduct directed at any one other than Plaintiff.  See State Farm, 538 U.S. at 424 ("[B]ecause the Campbells have shown no conduct by *State Farm* similar to that which harmed them, the conduct that harmed them is the only relevant conduct to the reprehensibility analysis").  Cf. Mathias v. Accor Econ. Lodging, Inc., 347 F.3d 672, 677 (7th Cir. 2003)(affirming a punitive award of $186,000 based on compensatory damages of $5,000 per plaintiff, a 37:1 ratio, where a bedbug-infested hotel repeatedly failed to properly clean its rooms and repeatedly attempted to defraud customers as to the existence of the infestation).  Without evidence of serial

misconduct, the record cannot support the extraordinary six-figure punitive award against Defendant Oswald.

Lastly, there was no evidence presented to demonstrate Defendant Oswald's actions were the result of intentional malice, trickery, or deceit. Absent the reprehensible conduct necessary to support a punitive damage award, Defendant Oswald submits the punitive damage award in this case should be significantly reduced.

Reducing the punitive award is certainly not equivalent to condoning the violations found by the jury, but it is the function of the Court to ensure that such extraordinary levels of punitive damages are effectively reserved for the most serious violations, in order to avoid the "real problem" identified by the Supreme Court of "the stark unpredictability of punitive awards." Exxon, 554 U.S. at 472. A jury is not in a position to place its award in context, given past awards, nor is it expected to consider that its award will set a precedent in future cases. That is the job of this Court, as the Supreme Court has repeatedly stated. See State Farm, 538 U.S. 408; BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996); Exxon, 554 U.S. 471. Accordingly, the punitive award should be reduced in this instance.

### 2. The 10:1 ratio of punitive damages to compensatory damages in this case exceeds constitutional and common law limits and must be adjusted downward.

The punitive award in this case violates the principles of proportionality laid down by the Supreme Court, based on due process and federal common law, and must be adjusted downward. "The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." CGB Occupational Therapy, Inc., 499 F.3d at 192 (quoting Gore, 517 U.S. at 580). As the Third Circuit has explained, "the ratio of punitive damages to the harm caused by the defendant is a tool to insure that the two

12

bear a reasonable relationship to each other."  Willow Inn, Inc. v. Public Service Mutual Ins. Co., 399 F.3d 224, 233-234 (3d Cir. 2005).  "[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  State Farm, 538 U.S. at 425; see also Exxon, 554 U.S. at 514-515 ("In State Farm, we said that a single-digit maximum is appropriate in all but the most exceptional of cases…."); see also id., at 510 (noting that, among jurisdictions to have adopted a fixed maximum ratio of punitive damages, the majority of states cap the ratio at 3:1, even in cases "involving some of the most egregious conduct, including malicious behavior and dangerous activity carried on for the purpose of increasing a tortfeasor's financial gain").

The Supreme Court's decision in Exxon is an essential guide for assessing the ratio in this case and has been cited by this Court and the Third Circuit in Section 1983 cases as such.  See Mejias v. Roth (In re Bayside Prison Litig.), 331 F.App'x 987, 994 (3d Cir. 2009); Hayduk v. City of Johnstown, 580 F.Supp.2d 429, 484  n. 46 (W.D.Pa. 2008)("Although Exxon is a maritime case, it is clear that the Supreme Court intends that its holding has a much broader application.")[2]  A review of comparable case law demonstrates that the ratio here is excessive and must be reduced.

_____

[2] The punitive award must be reduced in this case regardless of whether the analysis is conducted under due process precedents like State Farm and Gore, or the federal common law, as in Exxon. While due process principles are relevant, the Corrections Defendant maintains that federal common law should control as a matter of law.  As in Exxon, authority for awarding punitive damages in Section 1983 cases derives from federal common law, as determined by the Supreme Court:  "In the absence of more specific guidance, we looked first to the common law of torts (both modern and as of 1871), with such modification or adaptation as might be necessary to carry out the purpose and policy of the statute."  Smith v. Wade, 461 U.S. 30, 51 (1983); see also id. ("As for punitive damages, however, in the absence of any persuasive argument to the contrary based on the policies of § 1983, we are content to adopt a policy judgment of the common law….").  The Third Circuit Model Jury Instructions note that the Exxon "Court's concern with the predictability and consistency of punitive damage awards may apply to § 1983 cases as well."  Third Circuit Model Jury Instruction, at 87 (citation omitted).  To be sure, the Model Instructions assert that the due process "precedents presumably govern a court's review of punitive damages awards in Section 1983 cases; there is no reason to think that a different constitutional standard applies to

Initially, few cases in this district or circuit have been found directly on point.  However, in <u>Drumgo v. Kuschel</u>, 2022 WL 3646349 (D.Del. 2022), an inmate sued a corrections officer "under 42 U.S.C. § 1983 for violating the inmate's Eighth Amendment right against cruel and unusual punishment during a routine frisk search at the prison."  <u>Id.</u>, at *1.

> After a two-day trial, a jury found that [the inmate] 'prove[d] that [the corrections officer] committed an act that violated [the inmate's] Eighth Amendment rights' but did not 'prove that he suffered any injuries as a result of' that act.  Consistent with the explicit directions on the verdict sheet, the jury therefore awarded [the inmate] nominal damages of $1.  The jury also awarded [the inmate] punitive damages of $500,000.

<u>Drumgo v. Kuschel</u>, 2022 WL 3646349, at *1 (citations to record omitted).

As here, the corrections officer contested the jury's punitive damage award as violative of the Due Process Clause of the Fourteenth Amendment, arguing that it must be vacated or reduced as a matter of law.  In addressing the claim, the court conducted a comprehensive survey of cases not limited to this circuit:

> Of all the comparative cases cited by the parties, only two, <u>Cleveland v. Curry</u>, 2014 WL 690846, at *1 (N.D.Cal. Feb. 21, 2014) and <u>Shepherd v. Fischer</u>, 2018 WL 3122053, at *2 (S.D.N.Y. June 26, 2018) involved sexual assaults committed by correctional officers during clothed-body searches of inmates.  The correctional officer's conduct in *Curry* was very similar to [the corrections officer's] actions here.  The jury in *Curry* found the officer liable under the Eighth Amendment and § 1983 for 'squeez[ing] and grabb[ing]' five inmates' genitals 'in the course of conducting clothed-body searches on them between 2006 and 2008.'  2014 WL

---

Section 1983 cases...."  <u>Id.</u>, at 86.  However, while this assertion cites *Exxon*, it does not address *Exxon*'s observation that "[o]ur due process cases, on the contrary, have all involved awards subject in the first instance to state law."  554 U.S. at 502; <u>see also</u> <u>Basista v. Weir</u>, 340 F.2d 74, 86-87 (3d Cir. 1965)("Federal common law must be applied to effect uniformity, otherwise the Civil Rights Act would fail to effect the purposes and ends which Congress intended....  We are of the opinion, as we stated, that the federal common law of damages commands the issue of damages in the case at bar," including punitive damages).  As explained above, punitive awards in Section 1983 cases are not viewed as a creation of state law, and so are properly subject to the "more rigorous standards" announced by the Supreme Court in *Exxon*.

690846, at *1.  The jury awarded $2,000 in compensatory damages to three of the inmates, $5,000 in compensatory damages to the fourth inmate, and $10,000 in compensatory damages to the fifth inmate.  Id.  It also awarded $5,000 in punitive damages to each inmate.  Id.  The Court rejected the defendant's constitutional challenge to the punitive awards, finding that '[t]here is no glaring disparity between the compensatory damages awarded here (between $2,000 and $10,000), and a punitive damages award of $5,000.'  Id. at *10.

The conduct of the two correctional officer defendants in *Shepherd* was more egregious than the officer's actions in *Curry* and [the corrections officer's] actions here.  For example, one of the officers in Shepherd 'rammed' a metal wand between the plaintiff's 'butt cheeks' while the other officer handcuffed the plaintiff and then 'grabbed [his] testicles, and kept on squeezing [his] genital area for 30 to 50 seconds.'  2018 WL 3122053, at *2-*3 (internal quotation marks omitted; alterations in the original).  The defendants in *Shepherd* also threatened to anally rape the plaintiff and taunted him repeatedly.  Id. at *3.  The jury in *Shepherd* awarded the plaintiff one dollar in nominal damages and $20,000 in punitive damages.  Id. at *1.  In upholding the damages award, the court noted that the defendants' 'conduct was violent in nature, involved a threat of serious sexual violence, and was accompanied by comments suggesting that [they] [were] acting maliciously.'  Id. at *7.

I was able to find one other case where a prison guard was found liable for sexually assaulting a fully clothed prisoner.  In Morton v. Johnson, 2015 WL 4470104 (W.D.Va. July 21, 2015), the court entered a default judgment against a male prison guard accused by a female inmate of 'touch[ing] her breast' and 'rub[bing] down [her] stomach ... to [her] private area' where he 'felt [her] up' as he 'hugged' her.  Id. at *1.  The court awarded the inmate $2,000 in compensatory damages and '$5,000 in punitive damages to punish [the defendant] for his reprehensible conduct and to deter other correctional officers from committing similar abuses against the individuals placed in their custody.'  Id. at *9.

Drumgo v. Kuschel, 2022 WL 3646349, at *6.

Ultimately, the court concluded that,

> [b]ased on my review of these cases and the cases cited by both parties, I find that the jury's punitive award in this case was excessive and violated [the corrections officer's] due process rights. The punitive damages award in *Shepherd*—$20,000—was 96% less than the punitive award in this case even though the officers' conduct in Shepherd was much more violent, threatening, and

malicious than [this officer's] conduct.  A $500,000 award under the circumstances of this case shocks the conscience and grossly exceeds what was required to serve the needs of deterrence and punishment.  Leaving in place such an exorbitant award will also dissuade correctional officers from conducting searches they would otherwise perform and lead to the introduction of weapons and contraband into Delaware's prisons.  It will also deter competent professionals from seeking out correctional officer positions.  All told, allowing a $500,000 punitive award to stand will result in increased security risks in an already dangerous environment.

Drumgo v. Kuschel, 2022 WL 3646349, at *6.

The court then determined that an award of $5,000 in punitive damages was appropriate:

In my view, $5,000 –the same amount awarded in *Curry* and *Morton*– is an appropriate punitive award in this case.  [The corrections officer's] actions were on par with the defendants' conduct in those cases, and a $5,000 penalty is adequate to punish [the corrections officer] for his actions and deter others from engaging in the type of conduct for which he was found liable.  A $5,000 punitive award is also in line with punitive awards imposed against correctional officers for more egregious sexual assaults against inmates.  See, e.g., Lagarde v. Metz, 2017 WL 457654, at *1-*2, *6 (M.D.La. Feb. 2, 2017)(awarding plaintiff inmate $1 in nominal damages and $1,000 in punitive damages where defendant demanded oral sex from the plaintiff, attempted to penetrate the plaintiff's anus with a broomstick, and threw the plaintiff to the ground); Carrington v. Easley, 2011 WL 2132850, at *1, *4-*5 (E.D.N.C. May 25, 2011)(awarding plaintiff $1 in nominal damages and $5,000 in punitive damages where defendant grabbed the plaintiff's penis and attempted to perform oral sex on him); McKinley v. Trattles, 732 F.2d 1320, 1322-23, 1327-28 (7th Cir. 1984)(affirming the jury's finding that two defendants conducted unconstitutional strip searches of plaintiff inmate, including by putting their fingers in plaintiff's anal cavity, but setting aside the jury's punitive damages award of $15,000 and suggesting that the district court enter a punitive damages award of no more than $6,000); see also Oxendine-Bey v. Harihan, 2015 WL 5331809, at *3-*4, *8-*9 (E.D.N.C. July 22, 2015)(awarding plaintiff inmate $5,000 in compensatory damages and $5,000 in punitive damages where defendant, a prison medical provider, sexually fondled an inmate multiple times during medical examinations), *report and recommendation adopted*, 2015 WL 5330571 (E.D.N.C. Sept. 14, 2015).

Drumgo v. Kuschel, 2022 WL 3646349, at *6.

The *Drumgo* court's analysis is instructive in this case, supporting a reduction in the punitive damages award on Plaintiff's April 2, 2015.  While there was a compensatory damage award here, a reduction in the punitive damage award to a 1:1 or 2:1 ratio –or the 5:4 ratio awarded by the jury on Plaintiff's August 1, 2013 claim– appears appropriate.  Other cases support this proposition.  In Mejias v. Roth (*In re* Bayside Prison Litigation), 331 F.App'x 987 (3d Cir. 2009), the Third Circuit reversed and remanded a $200,000 punitive award based on $45,000 in compensatory damages, or a 4.5 to 1 ratio. The plaintiff was a prison inmate who was "severely beaten" during a prison lockdown, resulting in "extensive bruising" as determined by prison investigators; there was evidence that the defendant –a prison administrator who, the Third Circuit noted, "occupied a unique position of authority and responsibility"– was aware of but "failed to respond to numerous allegations of inmate abuse," and was held liable for deliberate indifference under § 1983.  Id., at 988.  Despite being "cognizant of facts supporting a punitive damages verdict here," the Third Circuit was troubled by the district court's failure to consider whether a 4.5 to 1 may be close to the line of constitutional impropriety. *Id*. at 993-994.

Recommending *Exxon* and other precedents such as *State Farm* and *Gore* as providing "helpful guidance to district courts," the Third Circuit remanded the case for "close scrutiny" and a "hard look."  Id.  Indeed, one member of the panel, Judge Garth, would have held "that the maximum constitutional limit for punitive damages is a ratio of 1:1."  Id., at 993 n. 11.  After remand, the total judgment was reduced to $112,500 by agreement of the parties, see Case No. 07-3913, at [ECF 1108]– a ratio of 1.5 to 1, which is far below the ratio of the punitive award to the compensatory award in this case.

In <u>Kerwin v. McConnell</u>, 2008 WL 4525369 (W.D.Pa. 2008), this Court found that a $100,000 punitive damage award was excessive for a Section 1983 violation where the compensatory damages were only $5,000.  *Kerwin* took place against a background of allegations and evidence of official misconduct by prison officials (including assaults and humiliating strip searches), and the defendant, a prison official, was held liable for violating the plaintiff's First Amendment rights by issuing a misconduct citation in retaliation for the plaintiff's filing of a lawsuit.  <u>Id.</u>, at *2-*3.  The Court reduced the punitive award to $7,500, or a ratio of 1.5 to 1 (*i.e.*, the same outcome as occurred in the *Mejias* case following remand from the Third Circuit).  <u>Id.</u>, at *9.  <u>Cf.</u> <u>Johnston v. City of Pittsburgh</u>, 2014 WL 4649863, *2 (W.D.Pa. 2014)(judicial award of $5,000 in punitive damages to a plaintiff in a "road rage" incident involving an off-duty municipal police officer based on a $5,302 compensatory award for "assault, battery, and malicious prosecution" causing economic damages and "bodily harm and emotional distress …").

These cases demonstrate the punitive award in this case is grossly excessive, and far out of line with awards in comparable cases of alleged official misconduct in the Third Circuit, in the Western District of Pennsylvania, and in other federal courts.  <u>See also</u> <u>Sheedy v. City of Philadelphia</u>, 184 F.App'x 282, 285 (3d Cir. 2006)(*per curiam*)(in vacating a jury verdict against a defendant police officer for malicious prosecution and false arrest under § 1983, noting that "the District Court erred in failing to reduce the punitive damages to a single-multiplier of the jury's compensatory award")(*citing* <u>State Farm</u>, 538 U.S. at 425); <u>Jacobs v. Pennsylvania Department of Corrections</u>, 2011 WL 2295095 (W.D.Pa. 2011)(approving ratio of less than 2 to 1, based on compensatory damages of $35,005, in a *pro se* prisoner case alleging Section 1983 claims for violations of constitutional right to access to the courts, retaliation and conspiracy, and state-law defamation claim); <u>Shrey v. Kontz</u>, 981 F.Supp.2d 333, 351 (M.D.Pa. 2013)(approving ratio of

3.09 to 1, based on compensatory damages of $14,553.09, in a case of a police officer's illegal seizure of property); Sallitt v. Stankus, 720 F.Supp.2d 645, 650-651 (M.D.Pa. 2010)(approving ratio of 0.4 to 1, with punitive award of $100,000 on a compensatory award of $255,000, in a case alleging employment retaliation for supporting political opponents: "Therefore, the punitive damages award is less than the compensatory award and the ratio is appropriate under *Exxon*").

Neither of the two main exceptions to *Exxon's* golden ratio of 1 to 1 –(1) injury that is hard to detect or determine, or (2) nominal or low compensatory damages (especially economic in nature)– is applicable here.  First, a higher ratio may be acceptable "in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." Gore, 517 U.S. at 582; see also Exxon, 554 U.S. at 494. This exception is not applicable in this case, in which the injury is not "hard to detect."  Plaintiff here was awarded a not insignificant sum of $20,000 based on the testimony of Plaintiff concerning the injuries Plaintiff claimed to have suffered.  Therefore, this first this exception cannot rescue the punitive award here.

Second, a higher ratio may be acceptable "when the value of injury and the corresponding compensatory award are small (providing low incentives to sue)."  Id.  As an example of such an exception, the Supreme Court has focused on nominal damages, such as may be awarded in a Section 1983 case.  See id.  Cf. Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000)("Punitive damages may … be awarded based solely on a constitutional violation, provided the proper showing is made").  "Because actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all."  Williams v. Kaufman County, 352 F.3d 994, 1016 (5th Cir. 2003).  But this is not a case involving nominal damages and so this basis cannot save the excessive ratio here.

Another example of this second exception is if "a particularly egregious act has resulted in only a small amount of economic damages."  Gore, 517 U.S. at 582; see also Exxon, 554 U.S. at 494.  In the present case, however, this exception also does not apply as Plaintiff's alleged injuries are not economic.  Fundamentally, while the testimony regarding Plaintiff's injuries was limited, Plaintiff's compensatory award of $20,000 was not "small."

And the special circumstances of Section 1983 litigation mean that any importance of punitive damages as providing "incentive to sue" –which Exxon viewed as highly relevant– is not significant in this case.  Thus none of the possible exceptions to the Supreme Court's guidance on proportionality of punitive awards apply here.  This Court must therefore adjust the punitive award downward, in order to avoid the stark unpredictability the Supreme Court warned of in Exxon.

> **3.  This Court is not required to remand this case for a new trial but may order a reduction in punitive damages.**

This Court has the authority to order a reduction in the punitive award without offering Plaintiff the option of retrying the issue to a jury.  "Because the jury's award of punitive damages does not constitute a finding of 'fact,' appellate review … does not implicate the Seventh Amendment."  Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 437 n. 11 (2001).  Therefore, when a district court orders a reduction in punitive damages (whether under the label of "remittitur" or some other procedural name), it is well-established that the court may make its own determination as to a proper amount and then order such an amount.  See, e.g., Exxon, 554 U.S. at 295 ("As for procedure, in most American jurisdictions the amount of the punitive award is generally determined by a jury in the first instance, and that determination is then reviewed by trial and appellate courts to ensure that it is reasonable")(internal quotation marks omitted); see also id., at 515 (remanding for punitive award to be remitted, not retried); Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1049-1050 (8th Cir. 2002); Johansen v.

<u>Combustion Engineering, Inc.</u>, 170 F.3d 1320, 1331-32 (11th Cir. 1999).  Thus, because the excessive punitive award does not represent a "fact" found by the jury here, the Court should remit the award to a lower number and enter judgment accordingly.

### IV.    Conclusion

WHEREFORE, the Corrections Defendant, T.S. OSWALD, respectfully requests:

(1) that the Court enter judgment in Defendant's favor as a matter of law and/or grant a new trial on the August 1, 2013 claim; and

(2) that the Court enter judgment in Defendant's favor as a matter of law and/or grant a new trial on the April 2, 2015 claim; or, alternatively,

(3) that the Court enter a remittitur and reduce the punitive damage award on the April 2, 2015 claim to no more than $40,000.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General


  _/s/ Scott A. Bradley_
Scott A. Bradley, SDAG
Pa. I.D. 44627

OFFICE OF ATTORNEY GENERAL          Karen M. Romano
1251 Waterfront Place               Chief Deputy Attorney General
Mezzanine Level
Pittsburgh, PA 15219
T: 412-565-3573

Dated:  July 10, 2023