# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY UNSELD WASHINGTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBERT D. GILMORE, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 15-1031 <br><br> Judge Cathy Bissoon |

## ORDER

Defendant's Motion (Doc. 268) for judgment as a matter of law, for a new trial or for remittitur to reduce the punitive damages award will be denied.

Defendant's arguments regarding liability are premised on the notion that Plaintiff's evidence was insufficient to establish that Oswald sexually abused him during incidents on August 1, 2013 and April 2, 2015. The jury disagreed, and there is no basis to disturb its decision.

Although judgment as a matter of law was entered against corrections officers other than Oswald − because Plaintiff did not introduce evidence differentiating between them or establishing their participation – his evidence regarding Oswald was sufficient. Plaintiff identified Oswald as an officer who later "became a sergeant." *See* Trial Tr. (Doc. 276) at 16. Oswald, in his direct testimony, confirmed the promotion. Doc. 277 at 7-9. There was no suggestion that any other corrections officer likewise was promoted.

Plaintiff identified Oswald, by name, in connection with the August 1, 2013 incident.[1] And he testified that the corrections officer who later was promoted to sergeant (Oswald) sexually abused him on April 2, 2015. Doc. 276 at 13-15, 16-17.

Plaintiff did not enjoy the benefit of legal counsel. Unsurprisingly, his testimony was less clear than it would have been on direct examination by an attorney. The Court cannot say, however, that Plaintiff's testimony was so unclear that it failed to support the verdict. The jury was able to compare the assertions of Plaintiff, against those of Oswald, in determining what transpired. The jury found Plaintiff more credible. He presented enough evidence, and Defendant's liability-based arguments are unpersuasive.

Defendant's Motion for remittitur − to reduce the punitive damages award ($200,000) regarding the incident on April 2, 2015[2] − presents a closer question. The Court considers: (1) the degree of reprehensibility of Defendant's misconduct; (2) the disparity between the actual or potential harm suffered by Plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded here and in comparable cases. CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 189 (3d Cir. 2007) (citation to quoted sources omitted here, and hereinafter).

The degree of reprehensibility is the most important factor. *Id.* at 190. Reprehensibility is measured by, among other things, whether the harm was physical versus economic; whether the conduct evinced indifference to or reckless disregard of the health or safety of others;

---

[1] *See* Doc. 276 at 13-14 (alleging that Oswald pulled Plaintiff's tether, but also that the officers "st[uck] and prod[ded]" his buttocks several times as he was being led to and from his cell).

[2] Defendant does not challenge the award of $25,000 in punitive damages regarding the August 1, 2013 incident. *See* Def.'s Br. (Doc. 269) at 8 n.1.

whether the conduct involved repeated actions, as opposed to an isolated incident; and whether the conduct was the result of intentional malice, as opposed to mere accident. *Id.*

"[T]here is something particularly reprehensible about a law enforcement officer assaulting an inmate under his care," given the "outrageous abuse of power and authority." Doe v. Green, 2021 WL 2188534, *8 (S.D.N.Y. Apr. 29, 2021). By definition, sexual abuse in violation of the Eight Amendment invaded Plaintiff's physical being; it evinced indifference or reckless disregard; and it was the result of intentional malice. *See* Ricks v. Shover, 891 F.3d 468 (3d Cir. 2018). According to the jury, Plaintiff did not suffer an isolated incident. It happened on two separate occasions. *See* Jury Verdict (Doc. 262).

As for the disparity between compensatory ($20,000) and punitive damages ($200,000), the 10-to-1 ratio admittedly is high. Given the relatively low amount of compensatory damages awarded, however, concerns regarding the ratio are less salient. Coleman v. Vinson, 2019 WL 4644261, *1 (S.D. Ill. Sept. 24, 2019) ("[t]he smaller the compensatory damages, the higher the ratio of punitive to compensatory damages has to be in order to fulfill the objectives" of punishment and deterrence); *accord* Mackey v. Watson, 2020 WL 4734339, *3 (D. Colo. Aug. 14, 2020) (in cases "where there are little to no compensatory damages to compare, courts have consistently declined to apply the Supreme Court's 'ratio to the actual harm' factor for assessing the excessiveness of punitive damages").[3]

Finally, a comparison of the jury award to those in comparable cases does not compel remittitur. As previously indicated, the jury's punitive damages award fairly may be described

---

[3] In light of this jurisprudence, a jury award of nominal damages ($1) paradoxically may have made the punitive damages award less susceptible to challenge. The Court believes that the $20,000 compensatory award should be viewed on a continuum. Obviously, it is higher than an award of nominal damages; but it is not so high as to invite a second-guessing of the jury's determination regarding the amount necessary to punish and deter.

as falling at the "high end." But it is not unprecedented. *See, e.g.*, Coleman, at *2 (collecting cases, including ones where $54,000 in punitive damages were permitted alongside $6,000 compensatory, and $90,000 punitive, alongside $10,000 compensatory); Johnson v. Howard, 24 Fed. Appx. 480, 487 (6th Cir. Dec. 12, 2001) (affirming $300,000-punitive to $30,000-compensatory ratio in prisoner civil rights case).[4]

In the end, the jury's award of punitive damages was just that – the jury's award. The Court declines Defendant's invitation to second guess. *See* Johansen v. Combustion Eng'ring, Inc., 170 F.3d 1320, 1331 n.16 (11th Cir. 1999) (unless the award is unconstitutional, a reduction "would invade the province of the jury"). That the jury awarded different amounts of punitive damages, in connection with the separate incidents, evinces its measured consideration of the evidence. *See* Cherrone v. Snyder, 2021 WL 4355589, *5 (S.D. Ind. Sept. 24, 2021) (finding same, based on jury's determination that different corrections officers had varying degrees of culpability). The Court will not disturb its findings.

Consistent with the foregoing, Defendant's Motion (**Doc. 268**) for judgment as a matter of law, a new trial or remittitur is **DENIED**.

IT IS SO ORDERED.


October 2, 2023                                             s\Cathy Bissoon
                                                            Cathy Bissoon
                                                            United States District Judge

---

[4] Some of the cases with more modest awards, and ratios, came in decisions from the bench. *See, e.g.*, Doe v. U.S., 2018 WL 2431774, *10 (D. Ariz. May 30, 2018) (applying more modest ratio, for prisoner sexual assault, within the context of default judgment); Recio v. Vasquez, 2023 WL 2144300, *1 (N.D. Tex. Feb. 2, 2023) (same, regarding prisoner excessive force). More as a matter of self-recognition than loathing, it seems fair to suggest that juries are less inclined toward "navel gazing." The jury determined the amount-necessary to punish and deter, and it smacks of temerity to assume the Court knows better.

cc (via ECF email notification):

All Counsel of Record


cc (via First-Class U.S. Mail):

Henry Unseld Washington
AM-3086
SCI Somerset
1600 Walters Mill Road
Somerset, PA  15510-0001